LAWRENCE W. JENKINS *vs.* HENRY E. WESTON & another.

Suffolk.    November 30, 1908. — January 6, 1909.

Present : KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Evidence*, Remoteness, Opinion: experts. *Probate Court*, What parties may oppose allowance of will. *Will. Waiver.*

At the trial, on an appeal from a decree of the Probate Court disallowing a will, of an issue as to the soundness of mind of an alleged testator on May 20, 1905, the time of the execution of the instrument offered for probate as his will, the presiding justice without objection by the petitioner "fixed January 1, 1901, as the reasonable limit of time as to which evidence of the condition of the testator could be introduced." The contestants offered evidence as to acts and conduct of the alleged testator between January 1 and January 3, 1901, tending to show such unsoundness, and also the opinion of a physician, who attended the testator from January 8 to February 19, 1901, that he was not then of sound mind, and the evidence was admitted, the petitioner alleging an exception solely on the ground of remoteness. *Held*, that the exception must be overruled, the question as to whether the evidence was too remote being one to be determined by the presiding justice in his discretion, and there being nothing to indicate that such discretion was not exercised rightly.

At the trial, on an appeal from a decree of the Probate Court disallowing a will, of the issue whether or not the alleged testator was of sound mind, the following statements by a witness were admitted in evidence: that, at a time not too remote from the time of the executing of the alleged will, the testator "seemed to want to " superintend some work, " but could not concentrate his thoughts "; that the testator's habits in the use of liquor (such use and the excessive use of cigarettes being alleged to have caused general paresis resulting in mental unsoundness) never changed "but seemed rather to have a fuller mastery "; that on a certain occasion the testator committed " the deliberate act of scaring horses driven by " the witness, resulting in an arm and some of the ribs of the witness being broken, and, although the testator was present at the scene which followed, " it was not until the following day that he came to say that he had just heard of the accident." The statements were objected to as including expressions of opinion. *Held*, that the statements fairly came within the rule

that a witness may state the results of his observation, even though that does in some measure involve his opinion or judgment as to matters which cannot be exactly reproduced or described to the jury precisely as they appeared to the witness.

At the trial of an issue, framed on an appeal from a decree of the Probate Court disallowing a will, as to whether the alleged testator was of sound mind at the time of the execution of the will, there appeared as appellees, contesting the validity of the will, one who was next of kin to the testator, and also one who alleged that he was a creditor of the testator and that by agreement with the testator as such creditor he had been made a beneficiary in a former will of the testator. Without any objection on the part of the appellant, and with the concurrence of counsel for the next of kin, the active conduct of the case of both of the appellees was carried on by counsel for the creditor, he opening the case to the jury, calling all the witnesses, offering depositions which he had procured to be taken and cross-examining witnesses. At the close of the evidence, the appellants requested the presiding justice to rule in substance that upon all the evidence the creditor had no standing to oppose the allowance of the will, and that his rights would not be affected adversely by its allowance. The rulings requested were refused, the creditor's counsel was allowed to make the closing argument to the jury for the appellees, and the appellant alleged exceptions. *Held,* that the question whether the creditor had any standing to object to the allowance of the will was not open on the exceptions, since the jury were not to determine whether the will should be allowed, but solely to answer the question put to them with regard to the soundness of mind of the alleged testator. *Held,* also, that under the circumstances the presiding justice was right in allowing the counsel for the creditor to make the closing argument for the appellees.

APPEAL from a decree of the Probate Court disallowing the will of William H. Weston late of Boston.

The case was tried in the Supreme Judicial Court before *Rugg,* J., upon the following issue framed for the jury : " Was William H. Weston of sound and disposing mind and memory at the time of the execution of the instrument offered for probate as his last will and testament ? "

There were upon the record two contestants to the allowance of the will : Henry E. Weston, a brother and next of kin of the testator, and Marland L. Pratt, a creditor. At the trial Henry E. Weston was represented by A. Berenson, Esquire, as his attorney, who called no witnesses, relying upon the evidence introduced by others, and took no part in the trial except to ask a question or two of the witnesses for the petitioner, and to assist in the preparation, and, by conference with other counsel, in the trial of the case. Marland L. Pratt was represented by L. D. Brandeis, Esquire, and E. A. Wilkie, Esquire, as attorneys, caused to be taken and read the depositions of Dr. MacDonald

and W. R. Heakes, hereinafter referred to, and caused to be called all the witnesses who were examined on behalf of the contestants, and his counsel, in his behalf, made the opening and closing address to the jury, and in opening said to the jury that he appeared for Mr. Pratt, who contested as a creditor.

It appeared that the will was executed on April 25, 1905, and that the testator died on May 20, 1905. It was contended by the respondents that the testator was of unsound mind as the result of general paresis and alcoholism and cigarette smoking. The single justice fixed January 1, 1901, as the reasonable limit of time as to which evidence of the condition of the testator could be introduced.

The contestant Pratt testified in his own behalf and identified the following four telegrams:

" Sherbrooke, N. S.   January 1, 190 .  To H. Harris Phinney, 540 Tremont Building, Boston.   Have good report — send notice — close — keep water out — wait until letter tomorrow mail — forward Marly news — answer immediately.   W. H. Weston."

" Sherbrooke, N. S.   January 1, 1901. · To H. Harris Phinney, 540 Tremont Building, Boston.   Have discovered snag why I ran behind — writing tomorrow.   W. H. Weston."

" Sherbrooke, N. S.   Jan. 3, 1901.   To H. Harris Phinney, 540 Tremont Building, Boston.   Case of mesmerism by Dr. Ellis — you come or send some one to Sherbrooke, to McDaniel's Hotel — this is explanation — answer.   W. H. Weston."

" Antigonish, N. S.   February 20, 1901.   Mr. M. L. Pratt, Boston A. A.   Think Weston insane, but keep my opinion from him — have him see specialist — would suggest Putnam.   W. Huntley MacDonald."

The witness testified that he first saw the telegrams about January 5, 1901, and later talked with the testator about them. The telegrams then were offered in evidence as statements bearing on the testator's mental condition at that time, and, subject to the petitioner's objection as too remote, and to his exception, were admitted to prove a progressive disease of general paresis.

The testimony of the witness Heakes, objected to by the petitioner, was contained in a deposition, from which it appeared that the witness saw the testator daily for a period from some

time in 1901 until he left Nova Scotia.    In answer to the interrog-
atory, " Did you observe in your association with said William
H. Weston any incoherence in the talk and conversation of said
Weston ? " he aswered " Yes," and to the interrogatory, " If so,
please state as many instances of such as you can recall," sub-
ject to the petitioner's exception, he answered, " Sometimes in
consulting him on matters which he tried to superintend it was
impossible to get any intelligent information; he seemed to
want to do it, but could not concentrate his thoughts."    To the
interrogatory, " If within your knowledge he used any of these
[intoxicants, drugs, or tobacco] please state which, to what
extent, and whether his use of such articles, or any of them,
increased or decreased during the time of your association with
the said Weston," the answer was " From the time I first saw
Weston until he left Nova Scotia he was addicted to the use of
liquor.    These habits never changed, but seemed rather to have
a fuller mastery."    The petitioner objected to the last words of
the answer, " but seemed rather to have a fuller mastery," but
the same were admitted subject to his exception.    In answer
to the interrogatory " Please state whether or not, within the
time you knew him intimately, said Weston failed mentally or
physically," he answered, " Yes, both "; and to the interrogatory
" If so, please state, as far as you remember, any particular in-
stances or details from which said knowledge has been acquired,"
he answered, " On one occasion the placing of a large order for
general mining supplies with Mr. Percy Austin of Halifax, after-
wards denying it, supplies being returned to shipper.    The de-
liberate act of scaring horses driven by me in the middle of the
night, causing me the slight inconvenience of a broken arm and
a few broken ribs; although Weston was present at the scene
which followed, it was not until the following day that he came
to say he had just heard of my accident."    To the last para-
graph of this answer, beginning with " deliberate act of scaring
horses," the petitioner objected, but it was admitted subject to
his exception.

The deposition of W. Huntley MacDonald of Antigonish,
Nova Scotia, was read, from which it appeared that he was a
physician and had been practising for twelve years; that he
knew the testator professionally at Antigonish from January 8

to February 19, 1901, and rendered him medical attendance; that he was acquainted with his habits and manner of living; that his habits were irregular; that he was a hard drinker of alcoholic liquors; that he was an inveterate cigarette smoker; that in the deponent's opinion the continuation of such habits would render him a physical and mental wreck. To the interrogatory "At the time you knew him did you consider Mr. Weston to be of sound and disposing mind and memory?" the deponent answered, "At the time I knew Mr. Weston I did not consider Mr. Weston to be of sound mind"; and to the next interrogatory, "If not, please state concisely, briefly, and in particular the circumstances, if any, upon which you base your opinion to interrogatory 9"; he answered, "He was not apparently aware of his physical and mental condition, and I could not impress upon him the necessity of his giving up his habits of living. He did not give intelligent answers to all my questions, and seemed reckless as to the state of physical or mental health he might attain, and seemed dull in both comprehending and answering questions I asked him, — and seemed to have an inane and silly manner in understanding and answering questions. He was also a sufferer from alcoholic neuritis." To the answers to both of the last two interrogatories the petitioner objected on the sole ground that they were too remote.

At the close of the testimony the petitioner asked the presiding justice to rule and instruct the jury as follows:

1. Upon all the evidence the respondent Marland L. Pratt has no standing to object to the allowance of the will of May 2, 1905.

2. The allowance of the will in question, dated May 2, 1905, will not affect the rights of Marland L. Pratt adversely.

3. A written contract to make a will in favor of a certain person is binding, and gives the party with whom the contract is made the rights of a creditor in case the contract is not kept.

The rulings were refused by the presiding justice, the jury answered the question put to them in the negative; and the petitioner alleged exceptions.

*W. C. Cogswell & H. R. Bailey,* for the petitioner.

*A. Berenson,* for the respondent Weston.

*A. C. Vinton,* for the respondent Pratt.

SHELDON, J.　1. The petitioner's exceptions to the admission of testimony cannot be sustained.

The telegrams admitted were objected to only as being too remote. But each one of them was within the limit of time which previously had been fixed by the single justice, so far as appears without objection by either party. Three of these telegrams, those sent by the alleged testator, come within the general doctrine that the appearance, acts, conduct and declarations of one whose mental condition is in issue may be put in evidence, if they are of such a character as to throw light upon that question, and if they are not too remote in time. And whether they are too remote in time is a question which must be determined in the discretion of the justice who presides at the trial and hears the evidence, and his conclusion is not to be reversed unless it was manifestly unfounded. *Hagar* v. *Norton*, 188 Mass. 47, 52. *McCoy* v. *Jordan*, 184 Mass. 575, 576, 577. *Lane* v. *Moore*, 151 Mass. 87, 90. *Commonwealth* v. *Pomeroy*, 117 Mass. 143, 148. *Shailer* v. *Bumstead*, 99 Mass. 112, 130. We find nothing to indicate that this discretion was not rightly exercised in the case at bar. And for the same reason the testimony of Dr. MacDonald to his opinion that the alleged testator was of unsound mind early in 1901 and to the grounds of this opinion, was competent. It was not contended that Dr. MacDonald, who had been an attending physician to the deceased, was not qualified under our rules to express an opinion.

The testimony of Heakes was not incompetent as including statements of his mere opinion. He testified to the things which he himself had observed. His testimony cannot be said to have been irresponsive. It does not appear to have gone beyond his personal knowledge. It comes fairly within the rule that a witness may state the results of his observation, even though this does in some measure involve his opinion or judgment as to matters which cannot be exactly reproduced or described to the jury precisely as they appear to the witness. So far as they include opinions, these are rather conclusions in the nature of facts which have become a part of the knowledge of the witness than mere opinions. They are received *ex necessitate,* because of the impossibility of reproducing the numerous particular facts upon which they are founded. This is the general doctrine of

our decisions. *Partelow* v. *Newton & Boston Street Railway*, 196 Mass. 24, 31. *McCoy* v. *Jordan*, 184 Mass. 575, 578. *O'Neil* v. *Hanscom*, 175 Mass. 313. *Commonwealth* v. *Sturtivant*, 117 Mass. 122, 123. *Barker* v. *Comins*, 110 Mass. 477. *Parker* v. *Boston & Hingham Steamboat Co.* 109 Mass. 449. This doctrine was fully discussed, with abundant citation of authorities by Rugg, J., in *Gorham* v. *Moor*, 197 Mass. 522.

2. The question whether Pratt had any standing to object to the allowance of the will is not open upon these exceptions. The jury were not to determine whether the will should be allowed, but simply to pass upon the issue whether the alleged testator was of sound and disposing mind and memory. No question was raised when the case was opened to the jury or while the evidence was going in, of the right of Pratt as well as of Henry E. Weston to participate in the trial. Apparently by arrangement between these two as contestants, the active management of the contest against the will was left mainly to Pratt's counsel. It was he who called all the witnesses for the contestants, who had procured and who put in the depositions taken in their behalf, who cross-examined the petitioner's witnesses except for "a question or two" put by the other counsel, and who substantially conducted the whole trial, and manifestly was relied upon by both contestants to make the concluding argument to the jury. All this had been done with the concurrence of the other contestant, and without any hint of objection by the petitioner. Under this state of facts, the justice had a perfect right to allow Pratt's counsel to make the closing argument to the jury, if indeed he was not bound to do so. It could not be material whether the counsel in making that argument was to be regarded as acting for the one or for the other contestant. It was the weight of his reasoning and not his representative capacity that was to be considered. If his argument contained anything objectionable, yet the petitioner did not care to make the objection or to ask for any rulings with reference thereto. And the justice might well refuse to give to the jury either of the three instructions asked for. None of them had any bearing upon the only issue which was to be submitted to the jury, and upon which alone it was the duty of the justice to instruct them ; and the giving of them could have had no other effect

than to distract the attention of the jury from that issue. Accordingly, we need not consider the very interesting question whether Pratt, by reason of the appointment made in a former will in his favor, had any right to object to the allowance of this will, or whether any of his rights would have been injuriously affected by such allowance. If, now that it has been settled by the verdict of the jury that William H. Weston was of unsound mind when he executed this alleged will (*Busiere.* v. *Reilly*, 189 Mass. 518, 520; *Crocker* v. *Crocker*, 188 Mass. 16), the petitioner cares to raise the question of Pratt's right to be heard in opposition to its allowance, we need not consider whether he can do so at the hearing which will be had before a single justice to determine what decree shall be entered.

The bill of exceptions stated that adequate instructions, to which no exception was taken, were given as to all issues other than those referred to in the three requests for rulings. This was all that was called for.

*Exceptions overruled.*