BOSTON SAFE DEPOSIT AND TRUST COMPANY *vs.*
FLORENCE L. BACON.

Norfolk.  November 22, 1917. — March 5, 1918.

Present: RUGG, J. C., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Will*, Competency of witnesses, Soundness of mind, Undue influence.  *Witness*,
Attesting.  *Corporation*, Officers and agents.  *Evidence*, Of soundness of mind,
Opinion, Declarations of deceased persons, Presumptions and burden of proof.
*Practice, Civil*, Judge's charge, Exceptions.

The will of a woman, in which a trust company was named as executor, was exe-
cuted at the office of the trust company.  More than four years before her death
the testatrix and the trust company had executed an indenture of trust, where-
by she had transferred to the trust company as trustee certain bank books,
cash and securities amounting to about $50,000 and subsequently had trans-
ferred to it other property, so that at her death the trust company held sub-
stantially $100,000 which it was bound "to transfer, convey and pay over . . .
to her executors or administrators."  The attesting witnesses were the senior
clerk of the trust department of the trust company, the officer of the trust
company in charge of its real estate and mortgages and a lawyer employed in
the trust department of the trust company who had taken the acknowledgment
of the testatrix to the indenture of trust.  At the trial of issues relating to the
proof of the will, the contestant alleged that the will was not attested and
subscribed by competent witnesses.  The attesting witnesses were examined
on the *voir dire* and the presiding judge found as a fact that "these witnesses
are not disqualified by reason of any interest, and declined to rule that upon all
the evidence any one of said three witnesses was not a competent witness to
the will and further declined to rule that on all the evidence as a matter of law
the will . . . was not attested and subscribed by three competent witnesses."
*Held*, that the finding of the judge was warranted and that his ruling was right.
In the same case it was *said*, that the fact that the subscribing witnesses were the
servants of the trust company named as executor and acted at the request of
the trust company did not make the attestation of the will the act of the trust
company itself.
Upon the issue of the soundness of mind of an alleged testatrix, the presiding
judge excluded as evidence a certified copy of a decree of the Probate Court
appointing a guardian for an uncle of the testatrix as "an insane person, and
incapable of taking care of himself."  No evidence was introduced or offered
tending to prove that the testatrix was at any time afflicted with any form of
insanity or to prove that the malady suffered by the uncle was of such a form and
character as to be transmissible and inheritable from a common ancestor.  *Held*,
that the exclusion of the evidence was a proper exercise of judicial discretion.
In the case in which the point above stated was decided, a physician, who had
attended the late husband of the testatrix in his last illness but never had at-
tended the testatrix professionally, was asked, "In your opinion what was her

mental development, I mean the maturity of her mind?" The contestant, who put the question, did not ask to have the answer confined to a statement of what had been observed by the witness. The witness was not an expert in mental diseases. The judge excluded the question. · *Held,* that the exclusion by the judge of the question as calling for opinion was justified.

In the same case it was *said* that, if the counsel for the contestant did not wish to abide by the ruling of the judge excluding the question quoted above, he should have made it plain to the judge that the question called for a statement of the facts observed by the witness and not for the witness's opinion, and that, not having done this, it was not open to the contestant to contend that the question did not call for an expression of opinion as it purported to do.

In the same case the judge, subject to an exception by the contestant, refused to allow a cousin of the testatrix to testify that the witness's mother, long since dead, had told her between fifty and sixty years ago that a brother of her father, who also was an uncle of the testatrix, shot himself and committed suicide about 1836. *Held,* that the exception must be overruled, because the evidence might have been excluded on the ground that the judge did not believe that the statement ever was made, or, if he believed that it was made, he might not have been satisfied that the witness's mother had personal and adequate knowledge of the facts stated.

Upon the trial of the issue whether undue influence was exercised upon an alleged testatrix, the presiding judge in his charge erroneously instructed the jury that "the burden is upon the contestants to show that the established facts are inconsistent with any theory but that of the theory of undue influence," but his instructions as a whole made it plain that the jury were instructed correctly that the burden was not upon the executor to establish the negative of undue influence but was upon the contestants to show affirmatively the existence of undue influence by a fair preponderance of the evidence, and it was *held,* that there was no error of substance sufficient to sustain an exception.

APPEAL from a decree of the Probate Court for the county of Norfolk, allowing the will of Elisabeth Miller French, late of Brookline, who died on January 21, 1916, in which will the petitioner, the Boston Safe Deposit and Trust Company, a corporation, was named as executor.    ·

The issues sent for trial to the Superior Court are described in the opinion. Those issues were tried before *McLaughlin,* J. The evidence relating to the competency of the attesting witnesses is described in the opinion.

Mrs. Bowen, a cousin of the testatrix, testified that William Reed Holbrook, mentioned in the opinion, was a brother of the father of the testatrix and lived during the last two years of his life in the same house in which the witness lived in Dorchester and died there in 1886, that he occupied a front room of the house in charge of a woman nurse, who had the adjoining room, that he kept to his room most of the time, did not appear at meals and

had his meals taken up to him. The certified copy excluded by the judge was a copy of a decree appointing the brother of the witness the guardian of William Reed Holbrook.

Dr. Mann, mentioned in the opinion, was a woman physician, who had attended the late husband of the testatrix in his last illness in the months of May and June, 1911. She never had attended the testatrix professionally. She was asked, "Now, from your observation of her [the alleged testatrix], did you form some opinion as to her mental development?" and answered, "Yes, I had." She then was asked, "In your opinion what was her mental development, I mean the maturity of her mind?" This question was excluded by the judge.

The portion of the judge's charge relating to the burden of proof is described in the opinion.

The jury on each of the three issues returned answers sustaining the will; and the appellant alleged exceptions.

*W. R. Bigelow & V. J. Loring,* for the contestant.

*C. K. Cobb,* for the petitioner.

PIERCE, J. This is a probate appeal from the allowance of the will of Elisabeth Miller French, who died on January 21, 1916. Issues for the jury, as framed by a single justice of this court, were in regard to the execution of the will, the soundness of mind and memory of the testatrix, and the undue influence of certain persons named. In answer to the issues the jury found that the instrument propounded for probate was executed according to law, that the testatrix was of sound and disposing mind and memory, and that the instrument was not procured by or with the undue influence of the persons named or either of them. The appellant raises questions as to the competency of the witnesses to the will, the exclusion of evidence and the instructions of the judge. We shall consider the exceptions in the order of their argument in the brief of the appellant.

Were the witnesses competent at the time of signing the will? R. L. c. 135, § 1. *Pease* v. *Allis,* 110 Mass. 157. The attesting witnesses were examined on the *voir dire.* At the close of their testimony, which is set down in the bill of exceptions, the presiding judge found as a fact that "these witnesses are not disqualified by reason of any interest, and declined to rule that upon all the evidence any one of said three witnesses was not a compe-

tent witness to the will and further declined to rule that on all the evidence as a matter of law the will . . . was not attested and subscribed by three competent witnesses." An exception was duly alleged and saved to the foregoing ruling and refusal to rule. The evidence being reported the question of the competency of the witnesses is properly before us. *Gorton* v. *Hadsell*, 9 Cush. 508, 511. *Quinsigamond Bank* v. *Hobbs*, 11 Gray, 250, 258. *Ames* v. *New York, New Haven, & Hartford Railroad*, 221 Mass. 304, 306. However, the findings of fact are conclusive unless the party objecting thereto shall establish clearly that they were based on an erroneous view of legal principles. *Wylie* v. *Cotter*, 170 Mass. 356. *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1, 3.

It appeared from the testimony of these witnesses that an indenture of trust between the testatrix and the Boston Safe Deposit and Trust Company was entered into on August 24, 1911; that under it the testatrix transferred to the trust company, as trustee, certain bank books, cash and securities amounting to about $50,000; that subsequently, she transferred to it other property; and that at her death the trust company held substantially $100,000 which it was bound "to transfer, convey and pay over . . . to her executors or administrators." It further appeared that the attesting witness Lyman H. Allen was the senior clerk of the trust department of the trust company and had been in its employ for thirteen years; that he made the original book entries with reference to this property under the indenture of trust; that the property itself was placed with property belonging to others, held in similar manner, in the vaults of the trust company; that he worked "principally on the books, not particularly in reference to Mrs. French's estate, but all of our trust estates;" that he made the book entries with reference to the collection of interest on the savings bank deposits and they were credited to the account of the testatrix; that he did not actually collect the interest, but received the checks from the various institutions where the money of the testatrix was deposited, and that he "had little else to do with her estate." The attesting witness Robert L. Shewell had charge of the real estate and mortgages of the trust company and had nothing to do with the trust estate of the testatrix. The attesting witness Frank B. Tallman was a

lawyer, employed in the trust department of the trust company. He took the acknowledgment of the testatrix to the indenture of trust, made some entries on the books with reference to the trust property, and made one or two statements of account. He had nothing to do with the property itself. No one of the attesting witnesses was a stockholder but each of them had given bonds to the trust company.

Upon the foregoing evidence it is manifest that the finding and ruling of the presiding judge was right. No one of the attesting witnesses had any pecuniary or proprietary interest in the property to be disposed of by the will, and no one of them stood to gain or lose the smallest sum by the effect of a decree setting up or disallowing the probate of the will. *Hawes* v. *Humphrey,* 9 Pick. 350. *Northampton* v. *Smith,* 11 Met. 390, 396. *Luke* v. *Leland,* 6 Cush. 259. *Sparhawk* v. *Sparhawk,* 10 Allen, 155, 159.

We find nothing in the contention that the witnesses, in relation to the integrity of the trust fund, stood as guarantors because of their obligation under their several bonds to hold the trust company harmless for any breaches of trust arising from their own positive acts of default, *Franklin Bank* v. *Freeman,* 16 Pick. 535, 538; nor do we think the attestation was the act of the trust company because the witnesses were the servants of the trust company, and acted at the request of an officer of that company.

We are of opinion that the judge in the exercise of sound discretion rightly rejected as evidence of the insanity or of the mere weakness of mind or eccentricity of the testatrix the certified copies of the petition and decree of the Probate Court appointing a guardian of William Reed Holbrook "an insane person, and incapable of taking care of himself." Such a decree unreversed is *prima facie* evidence of the actual insanity of the person thereby placed under guardianship, and establishes a status of that individual which is notice of the incapacity of the ward to all the world. *Leggate* v. *Clark,* 111 Mass. 308. It does not establish as against strangers or as between a party, or privy, and a stranger the form of the insanity of the ward, its transmissible character, or any evidentiary fact upon which the ultimate adjudicated fact is grounded. *Brigham* v. *Fayerweather,* 140 Mass. 411, 413.

In the case at bar, other than the decree offered in evidence, no testimony was introduced or offered tending to prove that the testatrix was at any time afflicted with any form of insanity, nor was evidence offered to prove that the malady upon which the decree was founded was in form and character such as to be transmissible and inheritable from a common ancestor. It is undoubtedly the general rule and well established practice to admit evidence of the insanity of blood relatives of the testatrix in the ancestral line, when the insanity of that individual is in question; but such evidence is never admitted "in aid of the proof showing mere weakness of mind or eccentricity," nor does the rule permit indiscriminate and unexplained evidence of disease afflicting and affecting the mental faculties of the relatives of the person whose insanity is in issue. There must be a foundation laid for the admission of such evidence by the introduction of some evidence of the insanity of the person whose mental condition is in issue, and testimony to the predisposition to insanity by evidence at least tending to show that the disease of the blood relative was hereditary or transmissible. "It rests upon the ground of the hereditary character of insanity." *Baxter* v. *Abbott,* 7 Gray, 71. *Shailer* v. *Bumstead,* 99 Mass. 112, 131. *Myer* v. *Myer,* 184 N. Y. 54; *S. C.* 6 Ann. Cas. 26, and cases collected.

The exception to the exclusion of Dr. Mann's opinion as to the maturity of the testatrix's mind must be overruled. While the witness could properly testify to the mental development of the testatrix, which was apparent to ordinary or special observation, *Clark* v. *Clark,* 168 Mass. 523, 526, *Gorham* v. *Moor,* 197 Mass. 522, *Jenkins* v. *Weston,* 200 Mass. 488, see *Johnson* v. *Foster,* 221 Mass. 248, it is evident that the presiding judge understood the question what "in your opinion, . . . was her mental development," to call for an opinion, and not for conclusions of fact resulting solely from observation. Dr. Mann was not an expert in mental diseases or the family physician. The appellant should have made the purpose of the question plain to the judge if he did not wish to abide by the ruling. Not having done so he cannot now be permitted to contend that such was not the intent of the question.

We cannot say that the judge did not rightly exclude the testimony of Mrs. Bowen that her mother, who died many years ago,

told her between fifty and sixty years ago that John Holbrook (her father's brother) shot himself and committed suicide about 1836, because the judge may not have believed that the statement was ever made or, if he did so believe, been satisfied that the mother had personal and adequate knowledge of the facts stated. *Slotofski* v. *Boston Elevated Railway*, 215 Mass. 318, 321. *Johnson* v. *Foster*, 221 Mass. 248, 252. The evidence was not admissible as a fact of family history. *North Brookfield* v. *Warren*, 16 Gray, 171.

The charge that "It is not sufficient to show that the established facts are merely consistent with the exercise of undue influence. The burden is upon the contestants to show that the established facts are inconsistent with any theory but that of the exercise of undue influence," placed a greater burden of producing evidence to establish the affirmative of the issue of undue influence upon the contestants than the rule of proof by a fair preponderance of the evidence, if the charge be considered by itself and apart from the instructions earlier given, that "The burden is not upon the executors to establish the negative of it, but the contestants must establish, by a fair preponderance of the evidence, the affirmative of that issue;" and later, "on the third issue, that the burden is upon the contestants. If they establish, by a fair preponderance of the evidence, that the will as a whole was the result of undue and improper influence exercised . . . then your answer is to be, Yes. If they fail to satisfy you of that, . . . then your verdict should be, No." It is to be noted also that the meaning of the phrase "burden of proof" had been carefully and correctly given by the judge when instructing the jury upon the issue of the execution or not of the will according to law.

We find no reversible error.

*Exceptions overruled.*