OLD COLONY TRUST COMPANY, executor, *vs.* ANTONIETTA DI COLA.

Norfolk. March 6, 1919. — May 22, 1919.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Will,* Validity. *Undue Influence. Evidence,* Remoteness, Relevancy and materiality, Admissions, Competency, Of soundness of mind, Opinion: expert. *Physicians and Surgeons. Witness,* Expert.

At the trial of an issue as to whether an entire instrument, alleged to be a will, was procured to be executed by fraud or undue influence of five designated persons "or any of them," among them a woman, who at the time of the decedent's death had been living with him as his housekeeper and had been known generally as his wife, and to whom there was given a bequest not amounting to the entire property of the decedent, evidence as to early relations of the decedent and the woman, where the relations in question were alleged to have existed about twenty-five years before the death of the decedent and where the testimony was offered before the woman had testified, is not admissible to affect the credibility of the woman, because she had not yet testified, nor as an admission affecting the validity of the will, because no statement of a beneficiary under a part only of a will was admissible at the trial of the issue above described as an admission affecting the validity of the whole will.

At the trial of the issue above described, the judge in his discretion may exclude as too remote events in the life of a son of the woman, reputed to be the wife of the decedent, occurring twenty-four years before the death of the decedent, as well as occurrences at the decedent's home six years before his death.

In this Commonwealth, only the witnesses to a will, the testator's family physician and experts of skill and experience in the knowledge and treatment of mental diseases are competent to give their opinions as to the testator's mental condition.

The mere fact that a witness is a surgeon or a physician does not of itself qualify him as an expert in mental diseases.

A surgeon whose practice had been confined to surgery from the time of his graduation from a medical school and who, although he took such courses in mental diseases as were offered at the school in addition to practical work at the Boston Insane Hospital, clinics at Danvers Insane Hospital and clinics at the School for Feeble-Minded at Waverley, had not attempted to treat any kind of mental diseases, was permitted by a judge presiding at the trial of an issue, whether a testator, who had died from the results of having been shot and who within twelve hours after the shooting had made his will while on his deathbed, was of sound mind, to testify that in his opinion the testator had died of surgical shock, which causes anæmia, mental apathy, torpor and dulled senses. The judge excluded the opinion of the witness as to the testator's soundness of mind from the time he was shot until the time of his death. *Held,* that it could not be said that there was reversible error in the exclusion of the opinion as to the testator's soundness of mind.

An attorney who drew a will and was present when it was executed, but who was not a subscribing witness, may be permitted to state that he did not hear the testator say or do anything which indicated that he was not of sound mind.

After the woman, the reputed wife of the testator, at the trial above described had testified that the testator, both before and after she had procured a divorce from her husband, had promised to marry her, she was asked if the ground of her divorce was the desertion of her husband. The testimony was excluded. *Held,* that the exclusion was proper, as the testimony was irrelevant.

Testimony at the same trial of the attorney who procured the divorce of the woman from her former husband, except wherein it tended to contradict testimony previously given by the woman, was *held* properly to have been excluded.

At the trial of the issues above described, the judge instructed the jury that they were entitled to take into consideration the fact, if they found it to be a fact, that the will was unreasonable and unnatural, but that they should treat such evidence with care, and further instructed them as follows: "The law does not say that a man may not make an unjust or an unreasonable will. That is to say, it does not say that he may not make a will which appears to a jury to be unjust and unreasonable, because if he is of sound mind, has mind enough to make a will, follows the formalities and is not controlled and influenced by undue influence, it is his property, he can make such a will as he wants to and it is not for any jury to undertake under those circumstances to make his will for him." *Held,* that such instructions were proper.

Further instructions of the judge at the same trial, to the effect that statements in the divorce libel of the reputed wife of the testator, which were contradictory to statements made by her on the stand, were not to be considered by the jury as evidence of their own truth or falsity, but were to be considered only as affecting the credibility of the witness, were *held* not to be erroneous.

APPEAL from a decree of the Probate Court for Norfolk County allowing the will of Gaspare Di Cola, late of Brookline.

Issues were framed and were referred to the Superior Court for a jury trial as to the execution of the will, the soundness of the

testator's mind, and as to whether the alleged will was "procured to be made by the fraud or undue influence of Antonio G. Tomasello, Joseph A. Tomasello, Antonino Marchetti, Wayland F. Dorothy, and the person described in the will as the wife Antonina Di Cola (otherwise known as Antonina Bova) or any of them."

The issues were tried in the Superior Court before *Hammond*, J. Material evidence and exceptions by the appellants are described in the opinion.

The appellants asked for, and the judge refused to make, the following rulings:

"17. Where persuasion is used to a testator on his death-bed, when even a word distracts him, it may amount to force and inspiring fear."

"19. Gross inequality in the dispositions of the instrument, when no reason for it is suggested either in the will, or otherwise, may require explanation on the part of those who support the will to induce the belief that it was the free and deliberate act of a rational, selfpoised and clearly disposing mind."

"21. In a case of unaccountable inequality, justice and policy require clear and satisfactory proof of a free, deliberate, and disposing mind, before such a paper shall be established as a true and valid will.

"22. The unexplained failure of a testator, to mention or provide for a person, who would naturally have some claim on his remembrance, is evidence of want of testamentary capacity, undue influence, or fraud and should be weighed by the jury with all the other evidence in the case."

Subject to exceptions by the appellants, the judge charged the jury as follows:

"You are entitled to take into consideration on the question of whether he was of sound mind and on the question of undue influence, which I will come to in a minute, you are entitled to take into consideration the fact, if you find it to be a fact, that the will was, if you believe it to be, unreasonable and unnatural. But you should consider that question with care and be careful how you treat that evidence, for this reason: The law does not say that a man may not make an unjust or an unreasonable will. That is to say, it does not say that he may not make a will which appears to a jury to be unjust and unreasonable, because if he is of sound

mind, has mind enough to make a will, follows the formalities and is not controlled and influenced by undue influence, it is his property, he can make such a will as he wants to and it is not for any jury to undertake under those circumstances to make his will for him, and, therefore, you would be remiss in your duty as jurors who are sworn to decide cases here on the law and on the evidence to decide that question because you thought the will was unjust or unfair or you could make a better one. . . .

"I stated to counsel that I should instruct you in regard to the effect of the evidence introduced, to wit, the statement in the divorce libel, the divorce libel itself, and the statement made by Mrs. Di Cola, the woman who has been called Mrs. Di Cola, at the time she talked to the lawyer. As to that evidence, I admitted the divorce libel not because anything that is said in the divorce libel is evidence of the fact that the thing said was true. That is to say, if you read the divorce libel that she signed, that her husband deserted her at such and such a time, you are not to take that as evidence of the fact that he did desert her. The reason why that divorce libel is competent evidence in this case is because of the statement that is made in it that she had always been true to her marriage vows and as she testified that she had been in the position of wife to Mr. Di Cola for twenty-five years it is evidence on the question of the credibility of her testimony. It is not evidence of the fact whether she had been or not faithful to her marriage vows, but it is evidence that at some other time on some other occasion she said something which you might find to be inconsistent with her statement on the stand; and the same thing is true as to what she said to the lawyer about being the housekeeper, keeping house for him for twenty-four years. If you find that is inconsistent with the statement she made on the stand, it is not evidence that she was his housekeeper, but it is evidence as to the credibility of what she said on the stand and you are to take it into consideration and give it such credibility as you may see fit in deciding this case."

The jury answered the issues favorably to the executor; and the appellant alleged exceptions.

*H. E. Perkins*, for the appellant.

*Asa P. French*, (*S. L. Bailen & F. Leveroni* with him,) for the appellee.

CARROLL, J.  This is an appeal from a decree of the Probate Court allowing the will of Gaspare Di Cola.  Issues were framed and the trial was in the Superior Court.  The woman, Antonina Bova, described in the will as the wife of the testator and known as Mrs. Di Cola, kept house for him for several years.  He bequeathed to her the furnishings of the home, jewelry and Italian government bonds.  She was also to receive $100 a month during her life, and in addition was given the use of a tenement in the testator's house in Brookline.  The remainder of his estate was given to his brother.

The jury found that the will was executed according to law, that the testator was of sound and disposing mind and memory at the time of its execution and that the will was not procured through fraud or undue influence.

We deal with the questions raised by this bill of exceptions in the order in which they are discussed by the appellant.

1. One of the witnesses to the will, after testifying that on the day of the testator's funeral Mrs. Bova told him she was not Di Cola's wife, was asked what she said about the beginning of her relations with Di Cola, it appearing that the intimacy between them began in Sicily, where they both lived, more than twenty-five years before his death.  It is argued that this evidence was admissible to affect the credibility of Mrs. Bova; but there is nothing in the record to show that when the evidence was offered Mrs. Bova had testified.  It was not admissible as an admission made by her, for while she was one of the parties charged with unduly influencing the testator, and a beneficiary under the will, the issue before the jury was not the validity of the bequest to her, but the validity of the whole will, and one of the beneficiaries could not prejudice the rights of the other legatees by admissions indicating her fraud or undue influence in procuring the execution of the will.  *Aldrich* v. *Aldrich*, 215 Mass. 164.  *McConnell* v. *Wildes*, 153 Mass. 487, 489, and cases cited.

2. The appellant offered to show by Antonino Bova, a son of Mrs. Bova, the circumstances and surroundings of his aunt with whom he was left in Italy twenty-four years before, when his mother came to this country.  No offer of proof was made; and even if the condition in life of the aunt were relevant, the occurrence was so remote that the judge in the exercise of his discretion

might properly exclude it and his decision is not to be reversed unless it is clearly unfounded. The evidence of Bova relating to the quarrels between Di Cola and his mother was properly excluded for the same reason. *Johnson* v. *Foster,* 221 Mass. 248, 252. *Aldrich* v. *Aldrich, supra. Jenkins* v. *Weston,* 200 Mass. 488. *Batchelder* v. *Batchelder,* 139 Mass. 1.

3. Mrs. Bova secured a divorce from her husband which became absolute in June, 1916. After she had testified, her attorney in the divorce proceedings was permitted to testify to certain statements made by her, solely for the purpose of contradicting her. The appellant excepted to the exclusion of the evidence of the son Antonino Bova, to the effect that he went to the attorney's office and complained of the relationship existing between the testator and his mother and that the divorce proceedings were the result of his efforts. The record does not show at what stage of the trial this evidence was offered. The statements of Bova to his mother's attorney were not admissible, and his efforts in securing the divorce were not material to the issue on trial.

4. The testator was shot on the evening of September 20, 1916. He was taken to the hospital where he arrived about 10:45 that night, and died about five o'clock on the morning following.

Dr. Albert Ehrenfried testified that he was a surgeon whose practice was confined to surgery from the time of his graduation; and although he had taken such courses in mental diseases as were offered at the medical school "in addition to practical work at the Boston Insane Hospital, clinics at Danvers [Insane Hospital], clinics at the School for the Feeble-Minded at Waverley," he had not attempted to treat any cases of mental disease. He gave his opinion that the testator died of surgical shock; and that surgical shock causes anæmia, mental apathy, torpor and dulled senses. He was not allowed to give his opinion of the testator's soundness of mind from the time he was shot until the time of his death. In this Commonwealth, only the witnesses to the will, the testator's family physician, and experts of skill and experience in the knowledge and treatment of mental diseases, are competent to give their opinions of the testator's mental condition. *May* v. *Bradlee,* 127 Mass. 414, 421. See *Commonwealth* v. *Rich,* 14 Gray, 335; *Emerson* v. *Lowell Gas Light Co.* 6 Allen, 146.

The mere fact that a witness is a surgeon or a physician does not of itself qualify him as an expert in mental diseases. It requires special skill and experience in the knowledge and treatment of such diseases to make a physician or surgeon competent to give his opinion on the subject. *Boston Safe Deposit & Trust Co.* v. *Bacon,* 229 Mass. 585, 590, and cases cited. Whether a witness has sufficient knowledge, learning and experience to state his opinion must be left largely to the discretion of the presiding judge, *Union Glass Co.* v. *Somerville,* 228 Mass. 202, *Barker* v. *United States Fidelity & Guaranty Co.* 228 Mass. 421, *Jordan* v. *Adams Gas Light Co.* 231 Mass. 186, 189; and we cannot say that there was reversible error in refusing to allow him to express his opinion of Di Cola's soundness of mind.

5. Wayland F. Dorothy, Esquire, who drew the will and was present when it was executed, though not a subscribing witness, was asked if he heard Di Cola say or do anything which indicated he was not of sound mind; he answered he did not, to which the appellant excepted. Dorothy was not asked his opinion, but to state the facts as he observed them; his attention was called to the acts and statements of Di Cola: the evidence was admissible. *Gorham* v. *Moor,* 197 Mass. 522, and cases cited.

6. Mrs. Bova testified that Di Cola, both before and after the divorce was granted, promised to marry her. She was then asked if the grounds of her divorce were the desertion of her husband. This evidence was properly excluded: it had no bearing on the issue before the jury. The testimony of the police sergeant describing what occurred at the Di Cola home was also properly excluded: it had reference to an occurrence six years before the time of the trial, and was so remote that the judge could rightly refuse to admit it. *Jenkins* v. *Weston, supra.* There was no error in the manner in which the judge dealt with the testimony of the attorney who acted for Mrs. Bova in the divorce proceedings: he was permitted to testify to her statements which tended to contradict her, and for this purpose the testimony was admissible; the additional evidence excluded was immaterial.

7. The appellant asked for certain instructions dealing with the effect of gross inequality in the disposition of the estate as evidence of fraud or unsoundness of mind. While the jury had a right to consider the reasonableness of the will, the mere fact

that it was in the opinion of the jury unreasonable, was not of itself sufficient to show that it was the result of undue influence or unsoundness of mind. *Davenport* v. *Johnson*, 182 Mass. 269. The jury were fully and accurately instructed on this point.

There was no error in what was said to the jury concerning the divorce libel and Mrs. Bova's statements to her attorney as affecting her credibility.

We find no error in the conduct of the trial.

*Exceptions overruled.*