JESSIE W. NEILL & others, executors, *vs.* GLADYS B. BRACKETT & another.

Suffolk.    December 1, 1921. — June 16, 1922.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Will*, Validity.  *Fraud.  Undue Influence.  Evidence*, Relevancy and materiality, Competency, Of undue influence, Of state of mind.  *Witness*, Refreshment of recollection.

Exceptions, saved by the proponent of a will, dated July 30, 1915, to a refusal by a trial judge to order a negative answer at the first trial of an issue, whether the alleged will was procured to be made through the fraud or undue influence of the widow of the alleged testator, his second wife, and of a former employee, were sustained on the ground that, while there was evidence tending to show that, after his second marriage, the alleged testator's powers both of mind and body began to wane, all the evidence fell short of showing an imperious and overruling spirit on the part of the widow which swayed the decedent's mind into conformity with her desires against his own judgment.  At a second trial of the issue there was additional evidence of statements by the alleged testator tending to show that he felt himself to be dominated and controlled by his second wife, that he chafed under such attitude on her part and that he made a new will with provisions unfavorable to his daughters, contestants, "at the solicitation — to please his wife."  There also was evidence of individual instances of humiliating domination by the second wife over the alleged testator; and that, during his last illness, after the will was executed, against the remonstrance of an attendant nurse on several occasions the wife pinched him to rouse him in order to procure his signature upon papers, he at the time being conscious, groaning and protesting.  *Held*, that

(1) The evidence as to the conduct of the second wife after the execution of the will and while the alleged testator was on his deathbed was competent as showing her utter indifference to his welfare and her control of him and her disposition to exercise this influence when it suited her purpose;

(2) The evidence offered at the second trial warranted an affirmative answer to the issue and required its submission to the jury;

(3) There was no evidence of fraud or undue influence on the part of the former employee named with the widow in the issue.

On exceptions saved by the contestants at the second trial of the issue above described, it was *held*, that

(1) Declarations of the widow and of two of the employees of the decedent (one of whom was named in the issue with the widow) made after the execution of the will and indicating fraud or undue influence on the part of the employees practised on the decedent, properly were excluded;

(2) A witness having testified that, having examined at the request of the testator land adjoining the testator's and belonging to his son-in-law, husband of a contestant of the will, he had reported to the testator that the erecting of

an apartment house on the testator's land would spoil the son-in-law's property and that the testator had replied that he did not care about that, a further question of the witness as to his reasons for deciding that the erection of the building would injure the son-in-law's property properly was excluded;

(3) It was not prejudicial error to refuse to permit one, who had been the testator's family physician for some time and until about three and one half years before the making of the will and who as a family physician had been permitted to give his opinion as to the condition of his patient at the time he was acting as such family physician, to answer a further question as to whether, when his relations with the testator as family physician were severed, he "would . . . say that at that time" the testator possessed such deterioration of his mental faculties as to render him susceptible of being easily influenced by his wife and a woman whom he had had in his employ for many years, and in whom he had apparent confidence;

(4) A question of a lay witness, "Did you observe whether he [the testator] was firm or weak in his decision?" and the answer, which was given subject to the appellant's exceptions, "Why, firm, I should say," were not incompetent, the question calling for a statement of fact and not for an opinion, and the answer being one of fact; and for the same reason the testimony of another lay witness, that he did not notice that the testator had any appearance of marked mental decline, was admissible;

(5) The attention of a witness properly was called to his testimony at the former trial for the purpose of refreshing his recollection;

(6) No error appeared in not permitting one of the executors named in the will, called as a witness by the contestants, to answer questions which sought to show that, through fraud, the good will of a corporation by means of which the testator had carried on his real estate business had been transferred to the witness and one other person, the evidence having no bearing on the question whether the testator was unduly influenced in making the will, and, so far as it had any tendency to affect the credibility of the witness, its admission being within the discretion of the trial judge; and for the same reasons evidence properly was excluded which related to conduct, in the management after the testator's death of the business formerly his, of the three executors named in the will, namely, the widow, the employee above described and one other employee named with the widow in the issue being tried.

PETITION, filed in the Probate Court for the county of Norfolk on September 7, 1917, for the proof of an alleged will of Edward E. Richards, late of Brookline, dated January 30, 1915.

Gladys B. Brackett and Bertha E. Porter, daughters of the alleged testator, appealed from a decree of the Probate Court entered on December 19, 1917, allowing the will. In the Supreme Judicial Court three issues were framed, the first and the second of which related to the formal execution of the will and the testamentary capacity of the alleged testator, and the third of which was as follows:

"(3) Was said alleged will procured to be made through the

fraud or undue influence of Mary E. Fallon and Sally S. D. Richards, or either of them?"

These issues were sent to the Superior Court for trial by jury in Suffolk County. At the trial there before *White*, J., all of the issues were answered affirmatively. Exceptions by the proponents of the will to a refusal of the trial judge to order a negative answer to the third issue were sustained in a decision reported in 234 Mass. 367.

There was a second trial of the third issue only before *King*, J. Material evidence then introduced, in addition to that introduced at the first trial, and also exceptions saved by the contestants to certain rulings by the trial judge upon the admission and exclusion of evidence, are described in the opinion. At the close of the evidence, by order of the trial judge, the jury answered the issue in the negative; and the contestants alleged exceptions.

*J. H. Devine & G. L. Mayberry*, for the contestants.

*F. H. Stewart*, (*W. A. Buie* with him,) for the executors.

CARROLL, J. When this case was before us, *Neill* v. *Brackett*, 234 Mass. 367, the executor's exceptions were sustained. The case then went to trial in the Superior Court on the issue of the fraud and undue influence of Mary E. Fallon and Sally S. D. Richards in procuring the will of Edward E. Richards. The court ruled that a finding of undue influence would not be warranted, and directed the jury to return a negative answer to the issue submitted: "Was said alleged will procured to be made through the fraud or undue influence of Mary E. Fallon and Sally S. D. Richards, or either of them?"

Many of the facts in evidence are referred to in *Neill* v. *Brackett*, *supra*. At the second trial there was additional evidence. One Hall testified that in the year 1913 he had a talk with the testator and he told the witness, in speaking of Mrs. Richards, that he (the testator) was "sorry that he got married to this girl. . . . She was raising hell with him. . . . She was wasting and spending his money," she "was keeping him out nights to social functions and he was losing his health and he was very unhappy." The testator also told the witness he had made a will and "had put Bertha's and Gladys' property in trust, at the solicitation — to please his wife." This testimony was not introduced at the first trial. George F. Holl, a witness called by the appellants, testified

that in the course of conversation with the testator in the year 1915 (the will in question was executed January 30, 1915), he stated he had made a new will; that "his wife [had] made him do things he hadn't ought to do." This testimony was not given at the former trial. In addition to this there was evidence from an expert not called at the former trial, indicating that the testator in 1915 had a weakened mind and was susceptible to his wife's influence. If this evidence were believed, the jury could say it disclosed a mind susceptible to the control of others, and taken in connection with the other evidence tended to show that the testator was one who could easily have been made the victim of fraud or undue influence. See *Aldrich* v. *Aldrich*, 215 Mass. 164, 170.

There was further evidence not appearing at the former trial. In 1914, when there was some trouble in the Richards house about hot water heating, and while the man in charge of the work was explaining the matter to Mrs. Richards, Mr. Richards "started to say something," when his wife "took him by the arm and led him out of the kitchen," and said, "Now Eddie, you go along. I'll take care of this;" that in the same year when a stove was being installed, she said to her husband, "Eddie, you old fool, get out of here. You don't know what you are talking about," that the testator said nothing to this and left the room; and on other occasions that she talked sharply to him; that at a birthday party given to the testator he didn't seem happy and Mrs. Richards "was criticizing him every move he made." During the last illness of Mr. Richards the nurse who was in attendance from August 12 to August 25, 1917, and who was not a witness at the former trial, testified that on one occasion when Mrs. Richards said, "I have just had a telephone call from the solicitous daughters. . . . If they think they are going to get anything out of the estate, they will get it from me, because I control the will," and that Mrs. Richards constantly ridiculed the testator's daughters. A day or two before Mr. Richards died Mrs. Richards was in his room trying to rouse him. She pinched him, and when the nurse remonstrated Mrs. Richards said, "this [referring to a document] must be signed today." She took his hand and guided it, in order to sign the paper. Mr. Richards was conscious at the time. He groaned, and in a distressed manner protested against

the conduct of his wife. On another occasion, when Mrs. Richards desired her husband to sign a paper, she guided his hand while he wrote his signature, and while he was moaning and protesting she shook him, put her nails into him and pinched him, leaving a black and blue bruise on his flesh.

At the close of the evidence the judge ordered the evidence as to the declarations of Mrs. Richards after the execution of the will, to be stricken out as having no tendency to establish the issue on the part of the contestants. He also ordered stricken out the evidence bearing on the conduct of Mrs. Richards as to the management of her husband's property, stating that he did that on the authority of *Shailer* v. *Bumstead*, 99 Mass. 112; and struck out the evidence of Mrs. Richards' acts and conduct in August, 1917, as testified to by the nurse. In our opinion the evidence of the acts and conduct of Mrs. Richards in her treatment of her husband when he was sick and in pain was competent as showing her utter indifference to his welfare and her control of him and her disposition to exercise this influence when it suited her purpose. *Emery* v. *Emery*, 222 Mass. 439. As we construe the bill of exceptions, the trial judge did not intend to exclude this evidence of the acts and conduct of Mrs. Richards showing her power over the testator on the ground that it was remote in time. The judge excluded this evidence for the reason that it had no tendency to show undue influence and not in the exercise of his discretion because of its remoteness.

The case should have been submitted to the jury, if the new evidence at the second trial, had it been produced at the former trial, in addition to that offered, would have resulted in a different conclusion by this court. *Clark* v. *New England Telephone & Telegraph Co.* 231 Mass. 546. Considering this additional evidence offered at the second trial together with the other evidence introduced, we think the issue should have been submitted to the jury. The evidence at the second trial tended to show that Mrs. Richards exercised a control over her husband, and that he was in such a mental condition that he was under her influence. This evidence in connection with the testimony of her attitude toward her husband's children by his former wife, the amount and value of the property deeded to her by her husband, the quarrels between her and the testator about her extravagance,

and the criticism of him in public, in our opinion was evidence to warrant the submission of the case to the jury; and we cannot say that as matter of law there was no evidence that the will was procured by the undue influence of Mrs. Richards.

In view of the fact that there must be a new trial, we consider some of the questions raised by the appellant's exceptions. The declarations of Mrs. Richards, Miss Fallon and Miss Neill, made after the execution of the will and indicating fraud or undue influence on the part of Miss Fallon and Miss Neill, practised on the testator, were properly excluded. Their statements could not be permitted to prejudice the rights of the parties in interest, and as we interpret the bill of exceptions, these admissions were excluded on this ground. *Shailer* v. *Bumstead, supra. Old Colony Trust Co.* v. *Di Cola,* 233 Mass. 119, 123.

There was no error in excluding the testimony of the witness Holl in regard to the effect upon the adjoining property of Dr. Porter, the testator's son-in-law, by the erection of an apartment house on the Richards land. The witness was permitted to testify that at the request of the testator he examined the property and reported that the erection of the apartment house on the lot would spoil the Porter property, and the testator replied he didn't care about that. His reasons for deciding that the erection of the building would injure the property of the Porters was properly excluded.

Dr. Cooper, the testator's family physician, was asked: "In 1911, at the time — or about September, 1911, when you finally severed your professional connections with the Richards family, or when they were severed, would you say that at that time Mr. Richards possessed such deterioration of his mental faculties as to render him susceptible of being easily influenced by a wife and a woman whom he had had in his employ for many years, and in whom he had apparent confidence?" This was excluded. It appeared that the witness was the testator's family physician for some time prior to the year 1911. As the family physician, the witness could testify to the testator's mental condition. *Old Colony Trust Co.* v. *Di Cola, supra.* Although this question was excluded, the appellants were not denied the opportunity of showing by this witness the condition of the testator at the time when the witness was acting as the family physician, the court

stating that as such family physician he could give his opinion as to the condition of the patient at the time he was acting as the family physician. We find no error in this ruling of the court.

The question put to the witness McKay (a lay witness), "Did you observe whether he [the testator] was firm or weak in his decision?" and the answer which was given, subject to the appellant's exceptions, "Why firm, I should say," were not incompetent. The question called for a statement of fact, and not for an opinion, and the answer was one of fact.

The evidence of the witness Russell (another lay witness) that he did not notice that the testator had any appearance of marked mental decline, was also admissible for the same reason. *Gorham* v. *Moor,* 197 Mass. 522, 524. *Raymond* v. *Flint,* 225 Mass. 521. *Jenkins* v. *Weston,* 200 Mass. 488. *Johnson* v. *Foster,* 221 Mass. 248, 250, 251. There was no error in calling the attention of the witness Dockerty to his former testimony for the purpose of refreshing his recollection.

Jessie W. Neill, one of the executors, was called by the appellants. They sought to show that through fraud the good will of the Richards Real Estate Company, a corporation through which the testator carried on his real estate business, had been transferred to the witness and one Starrett. The evidence was excluded. It had no bearing on the question whether the testator was unduly influenced in making the will, and so far as it had any tendency to affect the credibility of the witness, its admission was within the discretion of the trial judge. *Fisher* v. *Ford,* 232 Mass. 56. And for the same reason there was no error of law in excluding the evidence of the conduct of Mrs. Richards, Miss Fallon and Miss Neill in the management of the business of the testator after his death.

On all the evidence presented at the second trial of this case, there was nothing to show that the will of the testator was procured by fraud or undue influence of Mary E. Fallon, but in our opinion there was some evidence of the fraud and undue influence of Sally S. D. Richards, and on this issue the case should have been submitted to the jury. See *Clark* v. *New England Telephone & Telegraph Co., supra.*

*Exceptions sustained.*