FRANCIS H. ROWLEY, executor, *vs.* NORMAN N. COLE & others.

Suffolk.    January 16, 1923. — March 3, 1923.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Evidence*, Competency, Declaration of deceased person.  *Will*, Validity.  *Undue Influence.*

At the trial of an issue, whether a will of a woman was procured to be made through the fraud or undue influence of a cousin of her husband, it appeared that, while the cousin for twenty-five or thirty years had lived with the testator and her husband and had continued to live with her after her husband's death, he had died three months before the will was executed. There was evidence that he had attempted to establish a feeling of hostility between the testatrix and her next of kin, the contestants. He was not a beneficiary named in the will. Each of the next of kin was given a small bequest, and the bulk of the estate was given to a charitable corporation. Subject to exceptions by the petitioner, evidence was admitted tending to show statements by the cousin of the husband of the testatrix describing his efforts to induce the testatrix to provide that her property should not go to the contestants, but that it should go to him, or, if not to him, to the charitable corporation which she finally named as residuary legatee. *Held*, that, such cousin never having been an adverse party, his statements to witnesses, who repeated them at the trial, of efforts to procure a will which not only would satisfy his purpose of becoming the sole legatee but also would exclude the contestants, could not affect the rights of legatees claiming under the will, and were inadmissible. Following *Shailer* v. *Bumstead*, 99 Mass. 112.

PETITION, filed in the Probate Court for the county of Suffolk on March 21, 1921, for the proof of the will of Mary A. Read, late of Boston.

In the Probate Court, issues, described in the opinion, were framed and were tried in the Superior Court before *O'Connell*, J. Material evidence is described in the opinion. The evidence, to the admission of which the petitioner excepted, was in substance

that Joseph C. Aldrich, who had died before the testatrix, before his death had declared, in reference to his intention as to how the testatrix should dispose of her property, that he would own it all if he could, and that he would have it all fixed up with her; that he had it fixed so that the Coles (the contestants) would not get anything, and that the testatrix would give it all to the "cats and dogs;" that "Sis," meaning the testatrix, was "putty in his hands," a weak old woman; that the property would not go to the Cole side of the family and that he would either get the property or it would go "to the cats and dogs;" that he and the testatrix were going to give the money to the "Society for Animals;" and that he was always saying that the Coles should not have it.

The third issue was answered unfavorably to the petitioner; and the petitioner alleged exceptions.

*W. Flaherty,* (*C. F. Rowley* with him,) for the executor.

*F. S. Moulton,* for the contestants.

BRALEY, J. The jury, while finding that at the time of the execution of the will the testatrix possessed testamentary capacity, also found under the third issue that the will was procured to be made through the fraud or undue influence of Joseph C. Aldrich, a cousin of the testatrix's husband, and the case is here on exceptions of the petitioner to the admission of declarations made by him concerning his personal relations with, and influence over the testatrix in connection with the testamentary disposition of her property. The contestants are her heirs at law and next of kin, each of whom, after an annuity to her sister Abbie M. Jordan, received a small bequest, while the bulk of her estate was "given" to the Massachusetts Society for the Prevention of Cruelty to Animals. It appeared that Aldrich, who died three months before the will was executed, had lived with the testatrix and her husband "for twenty-nine or thirty years," and after the husband's death he remained with the widow. The jury could find on evidence over which no controversy is made, that the testatrix had said, "that Aldrich almost drove her crazy to turn the property over to him; that he was at her night and day; that she could not stand it but had a way of quieting herself when it got too bad," and that Aldrich entertained feelings of hostility toward the contestants and said to the testatrix in the presence of a witness who narrated the conversation, "that her relatives were doing favors to her,

writing nice letters to her, just to get her good will so that in the end they might get favors and things from her and 'every wish of good will that they extend to you is just a design against you to get something out of you for nothing.'" The testatrix replied, "Joe, you know that they are doing no such thing and I cannot always believe that my relatives just mean to work me for what there is in it." The interview was closed by Aldrich who said "That is right, stand up for that bunch of . . . Cole blood-suckers, if you want to. You know, I have lived with you all my life and you know that I find out things, have a way of finding out things you never knew of before. You know when I start to find out anything about a person, I can find it out. I have told you what they are, what their designs are. You won't listen to me, and if you don't want to believe me, why, I will leave just this minute. . . . The testatrix begged him not to go but he went up, packed his grip, and started to leave the place." While this evidence which we assume on the record was not too remote in time was admissible to indicate the state of the feelings of the testatrix toward her heirs as well as to show the relations of Aldrich to her, and his efforts to prejudice her against them, *Lewis* v. *Mason*, 109 Mass. 169, *Potter* v. *Baldwin*, 133 Mass. 427, his subsequent declarations describing what he had endeavored to accomplish were inadmissible. If he had been living and as a witness for the petitioner had denied having in any way attempted to procure a will substantially disinheriting the contestants, his declarations to the contrary could have been introduced to impeach his credibility. *Old Colony Trust Co.* v. *Di Cola*, 233 Mass. 119, 123, and cases cited. But never having been an adverse party, his statements to witnesses, who repeated them at the trial, of efforts to procure a will which not only would satisfy his purpose of becoming the sole legatee but also would exclude the contestants, could not affect the rights of legatees claiming under the will, for reasons so fully stated in *Shailer* v. *Bumstead*, 99 Mass. 112, and in *Neill* v. *Brackett*, 241 Mass. 534, that further amplification is unnecessary. The exceptions therefore must be sustained and a new trial granted on this issue.

*So ordered.*