GEORGE HASTINGS, executor, *vs.* MARY C. RIDER.

On the issue whether an instrument offered for probate as a will was executed when the testator was of sound and disposing mind, the opinions of physicians who attended him professionally during a sickness in which he executed it are admissible in evidence, as to his mental capacity to make a will immediately before and after its actual execution, accompanied by statements of the symptoms and appearances on which such opinions were based; although they were not family physicians of the testator, nor had made special study of mental disease.

On the issue whether a testator was of sound and disposing mind at the time of executing a will between seven and eight o'clock on the morning of the day of his death from cholera, with which he had been sick for three days, *Held*, that the opinion of a physician who was called to attend him professionally at three o'clock on the previous afternoon, remained with him till four o'clock in the morning, and returned to him at eight o'clock, as to his mental capacity to make a will at the two hours last named; and also the opinion of another physician who was called to attend him professionally at eleven o'clock on that morning, as to his mental capacity to make a will at that hour; were admissible in evidence, accompanied by their statements of the symptoms and appearances upon which such opinions were founded; although neither witness was the family physician of the testator or had made special study of mental disease.

APPEAL by the daughter and sole heir at law of Adam C. Rider, late of Springfield, from the allowance by the judge of probate of an instrument as his last will, the execution of which the appellant contended was procured by undue influence and while the testator was not of sound and disposing mind.

At the trial, before the chief justice, of issues framed on each allegation, the jury found on both against the will; and questions of law were raised by the executor, which the chief justice reported for the revision of the full court, by whose decision so much of the report as related to the issue of undue influence has become immaterial, the remainder of the report being in substance as follows:

It was admitted that the testator was of sound mind when

in health, and the only cause from which it was contended that his mind had become unsound at the time of his execution of the will between seven and eight o'clock on the morning of Saturday, August 3, 1867, was the sickness from which he died late in the afternoon of that day. The evidence tended to show that on the evening of Wednesday, July 31, he was attacked by vomiting and other symptoms of cholera; that on Thursday evening Dr. Jacobs, a physician, was summoned and found him " in a state of collapse, in great distress and much prostrated, the blood having settled in some places, and with the rice-water discharges peculiar to cholera;" that he continued to grow worse until on Friday about three o'clock in the afternoon (Dr. Jacobs not coming to attend to him as had been expected) Dr. Allen, another physician, was sent for, and came immediately, remained with him until a short time after four o'clock on Saturday morning, returned to him at eight o'clock, and had charge of him until he died, a third physician, Dr. Collins, being however called for consultation about eleven o'clock on Saturday forenoon.

Dr. Allen testified that the disease appeared to be cholera, which was a disease with which he was acquainted; that he found the patient on Friday afternoon in a state of collapse, with severe diarrhœa, in extreme prostration, his skin cold and clammy, and the pulse almost imperceptible; that he grew weaker, and it was difficult to get his attention; that " he was sometimes wandering, but not delirious," and his voice was weak and at times almost inaudible; that " about midnight the symptoms were a little mitigated, and were so till after four o'clock," when the witness went away; that on returning at eight o'clock he found the patient " more sunken and reduced, and his pulse seemed to be entirely gone." On cross-examination concerning the period of his attendance during the night, the witness said: " There was a partial delirium or wandering. I don't think he knew, half the night, what he was about."

The appellant then asked Dr. Allen the following question: " At the time you left Rider, about four o'clock in the morning, had he, in your opinion as a physician, sufficient mental power

to comprehend matters of business, such as his relation to property and the proper mode of disposing of the same by will?" This question was objected to "on the ground that the witness had no special skill in the management and care of insane persons, and had not been the family physician of the testator." It was conceded that he had no special skill beyond that of an ordinary physician of learning and experience in the treatment of diseases in general; and also that he had never acted as the physician of the testator before. But he was permitted to answer the question, and said: "I think he had not." The same question was repeated in application to eight o'clock, the time when the witness next saw the deceased; and he was permitted to answer it, notwithstanding like objection, and said: "At that time there had been a change for the worse."

Dr. Collins testified that, when he was called in consultation about eleven o'clock, he found the patient "in a dying condition," with a clammy sweat, labored breathing, and imperfect circulation; that the case was then hopeless. He was then asked the same question in relation to that time, which had been asked of Dr. Allen in relation to the preceding hours. The same objection was made; but the inquiry was allowed, although "it was conceded that the witness had no skill or experience in the treatment of insane persons, beyond that of Dr. Allen;" and he replied that "Rider was not at that time in a condition to transact any business."

*G. M. Stearns*, for the executor.

*H. Morris*, for the appellant.

GRAY, J. The rules which must govern this case are so well settled in this Commonwealth by judicial decision, that it is unnecessary to consider the numerous and conflicting adjudications in other states.

The subscribing witnesses to a will may testify to their opinion of the testator's sanity, upon its being presented for probate, because that is one of the facts necessary to the validity of the will, which the law places them around the testator to attest and testify to. But other witnesses, having no peculiar skill or professional experience, can testify only to facts within their own

knowledge, from which the condition of mind may be inferred, and are not permitted to state whether in their opinion, though derived from personal observation, a certain person was sane or insane at a particular time. *Poole* v. *Richardson*, 3 Mass. 330. *Buckminster* v. *Perry*, 4 Mass. 593. *Needham* v. *Ide*, 5 Pick. 510. *Commonwealth* v. *Wilson*, 1 Gray, 339. *Hubbell* v. *Bissell*, 2 Allen, 200. *Commonwealth* v. *Fairbanks*, Ib. 511. *Townsend* v. *Pepperell, ante,* 40. The reasons upon which these statements are excluded are, that they are not of facts, but opinions, of those having no peculiar duty or capacity to form them, upon a matter requiring special knowledge and skill to judge of intelligently, as to which every unskilled witness has a different standard, and which can be quite as well understood by the court or jury from proof of the details of the acts and conduct of the person whose mental capacity is in question. Evidence in probate cases in this Commonwealth is regulated by the common law, which has not adopted the looser practice, derived from the civil law, of the English ecclesiastical courts upon this subject. *Eveleth* v. *Eveleth*, 15 Mass. 307. *Wright* v. *Tatham*, 5 Cl. & Fin. 670.

An attending physician stands upon a different ground. It is his duty to make himself acquainted with the peculiarities, bodily and mental, of a person who is the subject of his care and advice ; and he has the experience which results from the performance of the same duty in other cases. He is therefore permitted to testify from his own observation to his opinion of his patient's mental capacity to make a will, in connection with the facts upon which that opinion is founded.

In the leading case of *Hathorn* v. *King*, 8 Mass. 371, which was argued by the ablest counsel before Justices Sedgwick, Sewall and Parker, the parties contesting the probate of a will asked the attending physicians of the testatrix " Whether in their opinion, at the time of executing the will, the deceased was of sound and disposing mind and memory." It was objected that the question of sanity must be determined by the conversation and actions of the party ; that these were the only standard ; and that the examination proposed would put the physicians in the place of the jury. But the court held the

question competent, saying : " The physicians may be inquired of, whether from the circumstances of the patient, and the symptoms they observed, they are capable of forming an opinion of the soundness of her mind, and if so, whether they from thence conclude that her mind was sound or unsound; and, in either case, they must state the circumstances or symptoms from which they draw their conclusions." In *Dickinson* v. *Barber*, 9 Mass. 225, the depositions of physicians to their opinion that a person was insane were rejected solely because the facts on which the opinion was based were not testified to.

In *Baxter* v. *Abbott*, 7 Gray, 71, a case fully discussed by the counsel and the court, it was adjudged that a physician who had practised many years in the neighborhood of the testator, and had been at times his medical adviser, might be asked whether in his opinion he was sane or insane during three or four months preceding the execution of the will; although it appeared that the witness had never had charge of insane persons, except such cases as ordinarily occur in medical practice, and that he uniformly advised that patients in whom insanity appeared to be developed should be sent to an asylum. The statement in the *per curiam* opinion in 2 Allen, 511, that this decision was not unanimous is an inadvertence; for the opinion of the court shows that the only division was upon a wholly different question. See 7 Gray, 83.

In *Commonwealth* v. *Rich*, 14 Gray, 335, upon a trial for murder, a physician who had not made the subject of mental disease a special study was allowed, without objection, to testify to his opinion of the defendant's mental condition from personal observation; and was only restrained from giving an opinion as to his sanity or insanity upon a hypothetical case stated as arising out of the other testimony, and from stating whether from what he knew of the defendant's mental powers he would in his opinion be competent to apply the rules of right and wrong to any state of circumstances concerning which he was under high excitement or the influence of an uncontrollable impulse, because neither of these inquiries related to matters within his own observation, or as to which he had shown himself to be qualified to testify as an expert.

In the case at bar, both of the physicians examined as witnesses had professionally attended the testator on his death-bed, and were rightly permitted to testify to their opinion of his mental capacity immediately before and after the execution of his will, accompanied by the symptoms and appearances upon which that opinion was formed. The short time during which they had any knowledge of the patient. might affect the weight, but not the competency, of their testimony.

The verdict of the jury, finding that the testator was not of sound mind at the time of executing the instrument offered for probate, must therefore be affirmed, and a decree entered accordingly; and it is unnecessary to consider the correctness of the rulings and instructions upon the issue of undue influence.

*Decree of judge of probate reversed.*