Alonzo B. Greene *vs.* John Cronin & others.

Norfolk. May 6, 1943. — June 30, 1943.

Present: Field, C.J., Donahue, Lummus, Dolan, & Cox, JJ.

*Evidence,* Conflicting statements of witness; Discretionary control of evidence; Opinion: expert. *Probate Court,* Discretionary control of evidence, Costs.

No prejudicial error was shown in the circumstances at a hearing in a Probate Court by certain remarks, made by the judge during cross-examination of a witness for the petitioner, as to the significance of testimony then given directly contradicting vital testimony favorable to the petitioner given by the witness on direct examination, where on redirect examination he again testified as he had on direct examination.

It was within the discretion of a judge of probate hearing a will contest to exclude as too remote in time evidence to show hostility of the principal beneficiary of the will toward the contestants at the time of the decedent's death, which was four and one half years after the will was made.

Evidence as to whether a decedent had paid for a grave stone and reasons therefor properly was excluded in the discretion of the trial judge as remote from the vital issues involved in a contest of the decedent's will.

A physician who had been the attending physician of a decedent for several years before his death properly was allowed to testify as to his opinion of the decedent's mental capacity, even though the witness was not asked and did not state his reasons for his opinion.

In the circumstances of an appeal by contestants of a will from a decree allowing it and of an appeal by the proponent from a decree allowing costs and expenses to the contestants' counsel, further costs and expenses might be allowed the contestants in the discretion of the Probate Court respecting the proponent's appeal but not respecting their own appeal.

Petition, filed in the Probate Court for the county of Norfolk on May 11, 1942, for proof of the will of Mary F. Kelleher, late of Quincy.

A contest of the will was heard by *Reynolds,* J.

*F. W. Mansfield,* for Cronin & others, respondents.

*G. W. Arbuckle,* for the petitioner.

Cox, J. There are two appeals, one from a decree of the Probate Court allowing the will of Mary F. Kelleher, the

other from decrees allowing costs and expenses to counsel for the contestants. The evidence is reported and there is a report of material facts. (G. L. [Ter. Ed.] c. 215, §§ 11, 18.) In the circumstances, the findings of fact made by the trial judge upon oral testimony will not be reversed unless they are plainly wrong. See *Old Colony Trust Co.* v. *Yonge,* 302 Mass. 49, 50; *Hiller* v. *Hiller,* 305 Mass. 163, 164.

1. It is unnecessary to recite the evidence or the findings of fact. *Copperman* v. *Turner,* 303 Mass. 448. *Kaler* v. *Kaler,* 305 Mass. 345. The printed record, consisting of five hundred one printed pages, has been read and examined, and we are of opinion that the findings cannot be disturbed. There was evidence warranting the finding that the legal requirements for the execution of the will were complied with. See G. L. (Ter. Ed.) c. 191, § 1. On the question of undue influence, the subsidiary findings are supported by the evidence, and the judge's ultimate finding, that there was no undue influence, is consistent with the subsidiary facts found. The same can be said of the issue as to the decedent's mental capacity. See *Needham Trust Co.* v. *Cookson,* 251 Mass. 160, 161, 162, and cases cited.

2. Exceptions saved by the contestants during the course of the trial require consideration.

After one of the witnesses to the will had testified on cross-examination to the effect that she signed the will before the decedent did, the judge said to counsel for the proponent: "You understand the answers this witness is giving to the questions?" to which counsel replied: "Yes." The cross-examination of the witness continued and in the course of a question that, in effect, repeated what the witness had said as to the time when she signed as a witness to the will, counsel for the proponent interrupted; thereupon the judge said: "Wait, I realize it is very important. Of course the will goes out if that is the fact." He then told counsel for the contestants to proceed. On redirect examination the witness testified that the decedent signed before she did. Whereupon the judge said: "Well, you just told Mr. Mansfield [counsel for the contestants] three or four or five times that you signed first." It is not neces-

sary to determine whether, in cases where it appears to be necessary to prevent a miscarriage of justice, a decisive or pertinent point not theretofore raised may be acted upon by this court in order to accomplish a right result in accordance with the law, see *Noyes* v. *Noyes*, 224 Mass. 125, 134, and cases cited; *Harrington* v. *Boston Elevated Railway*, 229 Mass. 421, 434, for we are of opinion from an examination of the entire record, and especially so much of it as sets out testimony of the witness in question, that there was no prejudicial error. The witness had already testified in direct examination that the decedent read the will, signed it, handed it to her, and that she signed it. It is, therefore, assumed that the judge, in arriving at the conclusion that the will was properly executed, took into consideration the fact that the witness had made contradictory statements. If the witness in answer to the questions on cross-examination damaged the proponent's case, the harm had already been done before the judge said anything. It is to be borne in mind that the judge was the trier of facts and that there was no jury to be impressed one way or the other by any of his remarks. The witness in question was the second to testify to the execution of the will. The contestants contend that the remarks of the judge served as a warning to the third witness, who had not testified. The third witness is a member of the bar, and it is hardly to be assumed that he would require any prompting as to the character of testimony necessary to establish due execution.

The will was executed on November 12, 1937. The decedent died on May 8, 1942. One of the contestants was asked in direct examination what was the attitude of the principal beneficiary under the will toward her on the nights of the "wake." The question was excluded, subject to exception. The witness was then asked what she talked about with this beneficiary during the "wake." Upon inquiry by the judge as to the purpose of the question, counsel stated that it was to show hostility toward the contestants, and that, during the lifetime of the decedent, he was equally hostile and tried to turn her against them. This question was excluded. Thereupon the witness was asked what the

talk was and she was permitted to give it. In the circumstances it cannot be said that the contestants were harmed. If it should be assumed, however, that the questions excluded were relevant to show hostility in 1942, having in mind that the will was executed in 1937, we are of opinion that it was within the discretion of the judge to exclude the inquiry as being too remote in time. The contestants suggest in their brief that the evidence was admissible to impeach the credibility of the principal beneficiary, who was a witness. Clearly it was not offered for this purpose.

There was evidence that the decedent had said that she paid for a monument that was placed on the cemetery lot in which her mother was buried. The judge found that she had said this, as well as other things, with reference to her dissatisfaction with the stone and with the manner in which the names had been carved upon it. He found, however, that the stone had been purchased by a cousin of the decedent with whose consent the decedent's mother had been reinterred in the lot and that this cousin bought the lot and paid for the monument in question. The contestants offered in evidence certain bank books of the decedent for the purpose of referring to certain withdrawals made at about the time of the decedent's talk about this monument, as tending to indicate that the decedent drew money for the purpose of paying for it. This also was excluded, the trial judge stating that, in effect, the withdrawals could not be used for the purpose indicated unless "you can connect . . . [them] up with some evidence to that effect." There was no error in this. The judge found that the decedent did say that she had paid for the monument. The extent to which matters remote from the vital issues may be gone into is a matter of discretion. *Commonwealth* v. *Lammi*, 310 Mass. 159, 164, and cases cited.

Subject to the exception of the contestants, a physician who attended the decedent during an illness in 1936, and during her last illness that began in November, 1941, was allowed to give his opinion as to her mental capacity based upon the results of his observations of her. There is nothing in the contention of the contestants that the opinion ex-

pressed was based upon his observations of the decedent only during her last illness. There was evidence that it was based upon his observations from the first time he attended her up to the last time he saw her prior to her death. The judge found that the physician was the decedent's attending physician from 1936 to the date of her death. The contestants' contention that this finding was unwarranted cannot be sustained. The evidence warranted it.

The physician was properly allowed to testify as to his observations. *Murphy* v. *Donovan,* 295 Mass. 311, 314–315, and cases cited. No question is raised as to the form of questions that were put to the witness or to the relevancy of his answers. The contention is made, however, that inasmuch as the physician was not asked and did not state the facts upon which his opinion was based, this made his evidence inadmissible. Reliance is placed upon the early cases of *Hathorn* v. *King,* 8 Mass. 371 and *Dickinson* v. *Barber,* 9 Mass. 225. In the first of these cases the attending physicians were asked whether, in their opinions, at the time of executing the will the deceased was of sound and disposing mind and memory. The jury found the requisite capacity of the decedent at the time her will was executed, and the will was allowed. A per curiam opinion, apparently expressed during the trial, is as follows: "The physicians may be inquired of, whether, from the circumstances of the patient, and the symptoms they observed, they are capable of forming an opinion of the soundness of her mind, and if so, whether they from thence conclude that her mind was sound or unsound; and in either case, they must state the circumstances or symptoms from which they draw their conclusions." Nothing more appears in this case upon this point. In the second case, depositions of two physicians who testified as to the insanity of the defendant were excluded. The report of the case is by Tyng in which he states that the rejection of depositions was confirmed by the court in that the "deponents state no facts on which they ground their opinion. This is to be required from physicians as well as others." (Page 227.) It does not appear whether the physicians in question ever

attended the defendant. These cases are referred to in *Hastings* v. *Rider*, 99 Mass. 622, 625, 626, where it is said of the question propounded in the first case that the court there held it competent. This statement is immediately followed by the quotation appearing above, taken from the *Hathorn* case. It is to be observed that in *Poole* v. *Richardson*, 3 Mass. 330, the court permitted the subscribing witnesses to the will in question to be inquired of generally as to the judgment they formed of the soundness of the decedent's mind at the time of executing the will. "Other witnesses were allowed to testify to the appearance of the testator, and to any particular facts, from which the state of his mind might be inferred, but not to testify merely their opinion or judgment." See *Buckminster* v. *Perry*, 4 Mass. 593; *Hastings* v. *Rider*, 99 Mass. 622, where it is said at page 625 that "It is . . . [the] duty [of an attending physician] to make himself acquainted with the peculiarities, bodily and mental, of a person who is the subject of his care and advice; and he has the experience which results from the performance of the same duty in other cases. He is therefore permitted to testify from his own observation to his opinion of his patient's mental capacity to make a will, in connection with the facts upon which that opinion is founded."

In *Commonwealth* v. *Rich*, 14 Gray, 335, a physician, who knew the defendant but who apparently had never attended him, was not permitted to testify as to the defendant's mental capacity. In holding that the question was inadmissible this court said that it was "because it did not relate to matters within the observation of the witness as a physician called to observe the symptoms of a patient, or to make any examination of his case, or to treat him medically; but merely to his general observation, in regard to which he had not shown himself qualified to testify as an expert." In *Commonwealth* v. *Spencer*, 212 Mass. 438, 447, reference is made to the duty of an attending physician and to the fact that in appropriate cases he is permitted to testify from his own observations as to the patient's mental capacity. It was said at pages 447–448: "But such a physician

comes under the rule as to experts, and when he is offered as a witness it is the duty of the presiding judge to decide upon his qualifications as such physician in, the first instance." In *Old Colony Trust Co.* v. *Di Cola*, 233 Mass. 119, 124, it is said that in this Commonwealth, only the witnesses to the will, "the testator's family physician, and experts of skill and experience in the knowledge and treatment of mental diseases, are competent to give their opinions of the testator's mental condition." See *Neill* v. *Brackett*, 241 Mass. 534, 539–540; *Murphy* v. *Donovan*, 295 Mass. 311, 314–315. An examination of the original papers in the last case cited discloses that the physician, who was allowed to testify as the attending physician as to his patient's mental condition, testified very briefly before this as to the ailments from which his patient was suffering and that he had some conversation with her. The question as to the physician's opinion was objected to and it was also contended that the evidence did not warrant the finding that the witness was the family physician. At the argument in this court, the point was made that it was the duty of the family physician to get from his patient his history, the state of his bodily health, his conversations, conduct, traits of character in sickness and health. It was pointed out that the witness had no such history nor any record of his patient's health, conversations or other traits, citing *Baxter* v. *Abbott*, 7 Gray, 71. In this court it was held there was no error in admitting this testimony, citing not only the *Baxter* case but also *Hathorn* v. *King*, 8 Mass. 371, and *Hastings* v. *Rider*, 99 Mass. 622.

In *Commonwealth* v. *Johnson*, 188 Mass. 382, the defence was insanity, and it was held that the omission of any instruction that experts testifying for the Commonwealth as to the mental condition of the defendant should state the grounds or reasons for their opinions was untenable. It was said at pages 388–389: "If the defendant desired their reasons his counsel was not precluded from asking for them on cross-examination. There is no general rule of practice which makes it imperative on the party calling such a witness that after he has been duly qualified, and given an

opinion, his reasons therefor also must be stated, though it is frequently done." In *Sexton* v. *North Bridgewater*, 116 Mass. 200, at 207, Gray, C.J., after stating that an expert witness was rightly permitted to state the reasons of his opinion as to the increase in the value of the petitioner's estate, said: "The nature of those reasons affected only the weight of his testimony."

The rule that attending physicians may give their opinions as to the mental capacity of their patients is said to be a well recognized exception to the general rule that a witness who does not come within one of certain recognized classes cannot give an opinion as to the soundness of mind of a person. *Clark* v. *Clark*, 168 Mass. 523, 525. Experts having proper qualifications come within this exception. If an expert may express an opinion upon a matter as to which he is qualified to give an opinion without stating his reasons therefor, it would seem that an attending physician may do so all the more. In the case of the latter, his opinion must necessarily be based upon his observations of his patient. Subscribing witnesses to a will are allowed to give their opinions concerning the mental capacity of the decedent whose will they witnessed. The facts which enter into the forming of an opinion by an attending physician come from his observations; they do not have to be founded upon any psychopathic tests or other data.

In *Hathorn* v. *King*, 8 Mass. 371, the statement of the court may be well read as authority for the proposition that the attending physician, as a part of any opinion expressed by him, must at the same time state the circumstances or symptoms from which the conclusion is drawn. It is to be observed that the question in that case that was under consideration was whether, in the opinion of the attending physicians, the decedent was of sound and disposing mind. It is possible that the statement of the court may also be construed to the effect that an attending physician may give his opinion, and that he also may be required to state the basis of his opinion during the trial of the case, although not necessarily while he is under direct examination. It is to be observed that for a considerable period of time, the

court saw fit to quote the statement of the court in the *Hathorn* case. For a long period of time, however, this court appears to have been contented with the general statement that the attending physician may express his opinion of the mental capacity of his patient. It is settled that the opinion of such physicians, in such circumstances, is admissible, and it would seem from the cases that the opinion is the important thing. We think that Gray, C.J., correctly appraised the situation, when he said in *Sexton* v. *North Bridgewater, supra:* "The nature of . . . [the] reasons affected only the weight of . . . [the witness's] testimony." If, as we think, the opinion is the important thing, and the witness may be required to give his reasons, the fact finding tribunal has before it not only the opinion, but the facts upon which it is based. We think that an attending physician qualifies when it appears that he is such. Any question of remoteness of the testimony of the physician in the case at bar cannot, in our opinion, upon the evidence, be availed of by the contestants. The question, now under consideration, is dealt with in Wigmore on Evidence, §§ 659, 675, 1917, 1922–1938. We are of opinion that the true rule is that an attending physician may give his opinion as to the mental condition of his patient without anything more appearing than that he is in fact the attending physician. Having been offered as a witness, he is subject to proper direct or cross-examination as to every fact that may bear upon the weight of the opinion that he has expressed. We think that this is the rule that has been observed in the trial of cases in this Commonwealth for a great many years.

3. The proponent, as already appears, appealed from the interlocutory decrees allowing costs and expenses to the contestants' counsel. We cannot quite say that this allowance was an improper exercise of the discretion of the judge. See, however, *Old Colony Trust Co.* v. *Third Universalist Society of Cambridge*, 285 Mass. 146, 151, and cases cited; *Spilios* v. *Papps*, 292 Mass. 145, 147–148, and cases cited.

4. The contestants filed in this court a motion for the costs and expenses of prosecuting their appeal and of de-

fending the appeal of the proponent. The basis for this motion is found in G. L. (Ter. Ed.) c. 215, § 45. The power of the court to allow costs and expenses is derived wholly from this statute. *North Adams National Bank* v. *Curtiss,* 284 Mass. 330, 336. Costs and expenses are in the discretion of the court, and are awarded "as justice and equity may require." G. L. (Ter. Ed.) c. 215, § 45. In passing, it may be observed that the probate judge, who allowed costs, may have rightly concluded that, in the circumstances disclosed, the case was a proper one in which to award costs and expenses. The question whether costs should be allowed here depends upon whether the circumstances of the appeal disclose that justice and equity require that they should be allowed. If it were not for the fact that the contestants have been required to defend the proponent's appeal, our opinion would be that the motion in question should be denied. After a trial of several days in the Probate Court, with the evidence taken in accordance with the provisions of the statute, the judge made a full report of the material facts, as he was required to do. It seems from a careful examination of the lengthy record that, although the contestants had a right to appeal, this is not a case where the decedent's estate ought to be required to pay for that part of the costs and expenses incurred by the contestants in their appeal. It may be a difficult matter to determine what part of the cost is properly allocated to the appeal of the proponent, but in so far as it is possible, costs in the discretion of the Probate Court may be allowed on that account.

*Interlocutory decrees affirmed.*
*Final decree affirmed.*