COMMONWEALTH vs. MARK SCHULZE.

Middlesex.   February 12, 1982. — August 30, 1982.

Present: BROWN, ROSE, & SMITH, JJ.

*Evidence,* Insanity, Expert opinion.  *Practice, Criminal,* Comment by judge, Assistance of counsel.

At a criminal trial in which insanity was raised as a defense, the judge did not abuse his discretion in excluding the opinion of a physician engaged in the general practice of medicine as to the defendant's mental condition where there was no evidence to suggest that the physician had any expertise or special skill in the field of psychiatry or mental illness. [346-348]

At a criminal trial, the defendant was not deprived of his constitutional right to effective assistance of counsel either by reason of his trial lawyer's failure to make a precise offer of proof as to the exact content of a witness's proffered testimony, inasmuch as such testimony was not admissible, or by the lawyer's failure to question an expert witness about an alternative theory of defense where no evidence sustained the existence of such a theory. [348-350]

A single incident in which comments were made by the judge at a criminal trial admonishing defense counsel in the presence of the jury, considered in the context of the entire record, was not so prejudicial as to deny the defendant a fair trial and thus did not require reversal of his conviction. [350-351]

INDICTMENTS found and returned in the Superior Court Department on October 4, 1979.

The cases were tried before *Dimond,* J., and motions for a new trial were heard by him.

*Brownlow M. Speer* for the defendant.

*Kevin J. Ross,* Legal Assistant to the District Attorney, for the Commonwealth.

ROSE, J.  After a trial by jury, the defendant was convicted of carrying a shotgun, of confining a person for the purpose of stealing from a building, of kidnapping, of two

counts of masked armed robbery, and of five counts of assault by means of a dangerous weapon.[1] A single justice of this court allowed the defendant's motion to consolidate his appeals from the denial of his motion for a new trial and from the judgments on the convictions. We affirm.

We summarize the evidence. In the early evening of September 17, 1979, the defendant and two other men entered a Somerville pharmacy armed with shotguns. The three men held the pharmacist, one of his employees and a number of customers at gunpoint while they robbed the store, taking money and narcotics. During the theft, the pharmacist secretly activated an electronic alarm device which was connected with the Somerville police station. By the time the robbers were ready to leave, the store was surrounded by police. One of the robbers escaped on foot and was never apprehended. The defendant, Mark Schulze, and his partner, Jay Queeney, remained in the store with the others, whom they held hostage.

The police conducted telephone negotiations with the defendant regarding his demands for escape and release of the hostages. Sometime that evening, Queeney declared that his wife was dying of cancer and that he wanted to die too. Queeney then ingested rat poison and other potent substances supplied at his request by the pharmacist and passed out. The defendant continued negotiations with the police, during which he demanded drugs from the pharmacist and drank quantities of various codeine cough medicines. The defendant gradually became groggy from the drugs. Eventually, the defendant became so weakened that the pharmacist was able to overpower and disarm him, after which the police entered, handcuffed the defendant, and transported

---

[1] The defendant was sentenced to concurrent terms of not less than seventeen years or more than twenty years in the Massachusetts Correctional Institution at Walpole on the two counts of masked armed robbery, and to concurrent terms of three to five years for the unlawful carrying of a shotgun and seventeen to twenty years for confining a person for the purpose of stealing from a building. The indictments for assault by means of a dangerous weapon and kidnapping were placed on file with the defendant's consent.

him, along with the unconscious Queeney, to the Somerville Hospital for treatment.

At trial, the defendant relied upon the defense of insanity.[2] The defendant particularly depended on the testimony of Dr. Rogoff, a qualified psychiatrist, who had examined the defendant to determine his competency to stand trial and his criminal responsibility at the time of the crime. Dr. Rogoff offered two diagnoses of the defendant: first, he stated that the defendant appeared to suffer from a chronic characterologic depression; second, he testified that the defendant was in an acute toxic psychosis at the time of the crime resulting from his use of heroin earlier that day. Dr. Rogoff concluded that "because of the acute toxic psychosis . . . [the defendant] was not criminally responsible for his actions."

The defendant also sought to introduce testimony from Dr. Chin, a general practitioner who had seen the defendant as a patient on two occasions prior to the crime, the more recent examination being just four days before the crime. After objection by the prosecutor, the trial judge excluded the doctor's testimony on the grounds that the witness was not a psychiatrist and did not have "qualifications to express an opinion as to this defendant's mental condition for criminal responsibility." In an offer of proof, the defense counsel stated that Dr. Chin would testify that he gave the defendant a prescription for Valium.

The Commonwealth presented two expert witnesses to rebut the defendant's evidence of insanity. Dr. Borenstein, a psychiatrist, testified that he had examined the defendant approximately one month after the crime. His opinion was that, on the date of the crime, the defendant had the capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law. Additionally, Dr. Kelley, a psychiatrist, testified that he had examined

---

[2] Prior to trial, a hearing was held at which the judge determined that the defendant was mentally competent to stand trial. That determination is not an issue of this appeal.

the defendant approximately six months after the crime and that he was of the opinion that on the date of the crime the defendant did not suffer from a mental disease or defect which prevented him from appreciating the wrongfulness of his actions or from conforming his conduct in accordance with the law.

The issues raised on appeal are: (1) whether the trial judge improperly excluded the testimony of Dr. Chin; (2) whether the defendant was deprived of his Sixth Amendment right to effective assistance of counsel when the defense counsel (a) allegedly failed to make a precise offer of proof as to the contents of Dr. Chin's proffered testimony, and (b) allegedly failed to question Dr. Rogoff on an alternative theory, mentioned in his written report, which suggested that the defendant was not criminally responsible because his use of drugs activated a preexisting mental disease; and (3) whether the defendant's right to a fair trial was violated when the trial judge allegedly berated the defense counsel in front of the jury during that counsel's cross-examination of a prosecution witness.[3]

1. *The exclusion of Dr. Chin's testimony.* While most other jurisdictions permit a lay witness to state his opinion as to a person's mental condition,[4] "such opinion is severely circumscribed in Massachusetts." Liacos, Massachusetts Evidence 102 (5th ed. 1981). Thus, the general rule in Mas-

---

[3] The issue relating to the alleged ineffective assistance of counsel is considered on appeal from the denial of the defendant's motion for a new trial. We treat the other issues as raised on appeal from the judgments on the convictions.

[4] See, e.g., *Evalt* v. *United States*, 359 F.2d 534, 547 (9th Cir. 1966); *Mason* v. *United States*, 402 F.2d 732, 738-739 (8th Cir. 1968), cert. denied, 394 U.S. 950 (1969); *United States* v. *Milne*, 487 F.2d 1232, 1234-1236 (5th Cir. 1973); *Hill* v. *State*, 249 Ark. 42, 43, 49-50 (1970); *Rupert* v. *People*, 163 Colo. 219, 222 (1967); *Mize* v. *State*, 240 Ga. 197, 199 (1977); *State* v. *Randol*, 212 Kan. 461, 467-468 (1973); *People* v. *Hannum*, 362 Mich. 660, 662-665 (1961); *State* v. *Risden*, 56 N.J. 27, 40 (1970); *State* v. *Mayhand*, 298 N.C. 418, 424-425 (1979); *State* v. *Lapham*, 135 Vt. 393, 401-402 (1977). See also Hughes, Evidence § 331, at 432-433 (1961); Liacos, Massachusetts Evidence 102 (5th ed. 1981); 2 Wigmore, Evidence § 568 (3d ed. 1940). Cf. Annot., 40 A.L.R.2d 15 (1955).

sachusetts is that persons who do not qualify as experts in mental illness may testify only as to facts observed and may not testify as to their opinions with respect to the mental condition of another. See *Commonwealth* v. *Rich*, 14 Gray 335, 337 (1859); *Commonwealth* v. *Spencer*, 212 Mass. 438, 447-448 (1912); *Old Colony Trust Co.* v. *DiCola*, 233 Mass. 119, 124-125 (1919); *Commonwealth* v. *Boyd*, 367 Mass. 169, 182-183 (1975); Hughes, Evidence § 331 (1961); Liacos, Massachusetts Evidence 117 (5th ed. 1981).[5] In determining whether a witness is qualified to offer an expert opinion, the trial judge must consider whether that witness "possesses sufficient skill, knowledge or experience in the field of his testimony that the jury may receive appreciable assistance from it." *Commonwealth* v. *Boyd*, 367 Mass. at 182. Liacos, *supra* at 110. McCormick, Evidence § 13 (2d ed. 1972). 7 Wigmore, Evidence § 1923 (3d ed. 1940). "The mere fact that a witness is . . . a physician does not of itself qualify him as an expert in mental diseases. It requires special skill and experience in the knowledge and treatment of such diseases to make a physician . . . competent to give his opinion on the subject." *Old Colony Trust Co.* v. *DiCola*, 233 Mass. at 125. It is for the trial judge to decide whether a witness has sufficient qualifications to state his opinion, and his determination, being one of fact, "will not be reversed except in rare instances where, as a matter of law, the exclusion of the proffered evidence would be an abuse of discretion and therefore unwarranted." *Campbell* v. *Thornton*, 368 Mass. 528, 541 (1975). *Commonwealth* v. *Spencer*, 212 Mass. at 448. *Commonwealth* v. *Devlin*, 365 Mass. 149, 152 (1974). *Commonwealth* v.

---

[5] This rule is subject to two long-standing exceptions in Massachusetts when the issues involve the execution of a will by a person whose mental capacity is brought into question. According to these exceptions, the attesting witnesses to a will and the testator's attending or family physician may testify as to their opinions of the testator's sanity at the time of the execution of the will. See *Williams* v. *Spencer*, 150 Mass. 346 (1890); *Commonwealth* v. *Spencer*, 212 Mass. at 447; *Old Colony Trust Co.* v. *DiCola*, 233 Mass. at 124; *Greene* v. *Cronin*, 314 Mass. 336, 343, 344 (1943); *Duchesneau* v. *Jaskoviak*, 360 Mass. 730, 734 (1972).

*Boyd,* 367 Mass. at 182. *Worcester* v. *Eisenbeiser,* 7 Mass. App. Ct. 345, 347 (1979).

We cannot conclude that the exclusion of Dr. Chin's testimony by the trial judge was an abuse of discretion amounting to error of law. It is clear from the record that Dr. Chin was called to testify about the defendant's mental condition at the time of his medical examination four days prior to the crime. Thus, it was required that Dr. Chin be qualified as an expert in the field of mental illness, see *Commonwealth* v. *Boyd,* 367 Mass. at 182, before such testimony would be admitted. However, the testimony merely indicated that Dr. Chin was a certified physician who had maintained a general practice in Boston for approximately thirty years; there was no evidence to suggest (nor did the offer of proof indicate) that Dr. Chin had any expertise or special skill in the field of psychiatry or mental illness. Accordingly, it was within the sound discretion of the trial judge to exclude such opinion testimony.[6]

2. *The alleged ineffective assistance of counsel.* After the trial judge excluded the testimony of Dr. Chin, counsel for the defendant made an offer of proof that Dr. Chin would have testified only that he gave the defendant a prescription for Valium. On appeal from the denial of his motion for new trial, the defendant, by new counsel, argues that Dr. Chin was in fact prepared to testify that he had diagnosed the defendant as suffering from "depression with anxiety and manic tendencies." The defendant contends that his trial lawyer's failure to make a precise offer of proof as to the exact content of the doctor's proffered testimony was a lapse which deprived him of his Sixth Amendment right to the effective assistance of counsel at a critical point in the trial. Even if we were to conclude (and we do not) that this alleged lapse by the defendant's counsel could be

---

[6] Because we hold that the exclusion of the testimony by the trial judge was justified on the ground that Dr. Chin was not qualified to render an expert opinion, we need not address the other arguments raised by the defendant concerning the admissibility of such testimony.

characterized as conduct "measurably below that which might be expected from an ordinary fallible lawyer," see *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974); *Commonwealth* v. *Rondeau*, 378 Mass. 408, 412 (1979), the defendant can show no prejudice resulting therefrom, inasmuch as such testimony would not have been admissible because Dr. Chin was not qualified to offer an expert opinion as to the defendant's mental condition. (See part 1 of this opinion, *supra*.) Accordingly, we conclude that the defendant was not deprived of his constitutional right to effective assistance of counsel by reason of an allegedly defective offer of proof.

The defendant also argues that his trial lawyer's failure to question Dr. Rogoff, an expert psychiatric witness, about an alternative theory of insanity on which the defendant might rely likewise constituted ineffective assistance of counsel. Dr. Rogoff had testified that at the time of the crime the defendant was suffering from a toxic psychosis unrelated to any preexisting mental condition which negated his criminal responsibility. The defendant now makes reference to *Commonwealth* v. *Shelley*, 381 Mass. 340, 349-350 (1980),[7] and claims that his lawyer should also have directed Dr. Rogoff's attention to the theory that the defendant was not criminally responsible because his use of drugs (i.e., heroin) activated a latent medical disease. This argument is without merit. The only evidence in the record to support the defendant's claim are vague speculations made by Dr. Rogoff in his medical report, admitted as an exhibit at the pretrial evidentiary hearing on the defendant's competency, and during cross-examination at a voir dire held prior to his testimony before the jury.[8] These

---

[7] In *Commonwealth* v. *Shelley*, decided after the trial in the instant case, the court noted that evidence that the use of alcohol had activated a latent medical disease might warrant a finding of not guilty. 381 Mass. at 350.

[8] Although Dr. Rogoff had concluded in his report that the "toxic psychosis" he believed the defendant was suffering from at the time of the crime

statements indicate only a mere possibility that such an alternative ground of insanity existed. More significantly, the testimony makes clear that Dr. Rogoff himself did not rely on the alternative theory, but believed that the defendant's toxic psychosis was unrelated to any latent medical condition. Thus, there is no evidence which would substantiate this alternative theory which the defendant now claims his trial counsel was remiss in not pursuing. These facts hardly call for the conclusion that the trial lawyer's decision not to raise this alternative theory in some manner constituted ineffective assistance of counsel. As did the trial judge in his order denying the defendant's motion for a new trial, we "find no fault in trial counsel's handling of the matter."

3. *Comments made by the judge in the presence of the jury.* During defense counsel's cross-examination of a prosecution witness, the judge sustained the prosecutor's objection to a question and added the comment, in front of the jury, that defense counsel "kn[e]w perfectly well" that the question was "improper." After the defense counsel made a formal objection to the judge's comments, the judge responded by saying, "Very good, right. I repeat it before the jury." The defendant now argues that "when the judge re-

---

was *not* related to any preexisting mental condition, he also noted an alternative theory:

> "[I]t is . . . not clear whether it was a toxic psychosis alone that caused [the defendant's] behavior. There is evidence in the limited record I was able to see that, although usually docile and passive, certain drugs consistently trigger atypical, aggressive, and uncontrolled responses in him. If this is the case, then the drug ingestion may have elicited an acute mental state — an illness or disease — which is apart from the addiction itself, and would satisfy the McHoul test . . . ."

During cross-examination at the voir dire, Dr. Rogoff stated that "there *may* yet be an additional factor which is called an ideosynchratic [sic] *response to a drug*" (emphasis added). Except for these statements concerning what might have been the case, there is nothing else in the record which suggests that the defendant should be found not criminally responsible on the ground that his use of heroin activated a latent medical disease.

sponded to defendant's objection to his improper berating of defense counsel before the jury with deliberate repetition of the initial impropriety, he violated the defendant's constitutional right to a fair trial." We think that this argument far overstates the severity of the matter. Our examination of the entire record indicates that the trial judge did not handle the case in an unfair manner. The judge's admonition to the defendant's trial counsel was an isolated incident occurring early on the second day of a four-day trial. The entire exchange takes up just over one page out of a transcript consisting of nearly 450 pages. In the entire transcript, this is the only incident which the defendant is able to cite to support his position that the trial judge "berated" his counsel. We conclude that this single incident, which did not indicate any partiality by the judge, was not prejudicial to the defendant. There was no reversible error. See and compare *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 847-848 (1980); *Olson* v. *Ela*, 8 Mass. App. Ct. 165, 166 n.1 (1979); *Commonwealth* v. *Mosby*, 11 Mass. App. Ct. 1, 16-17 (1980); *Adams* v. *Yellow Cab Corp.*, 12 Mass. App. Ct. 931 (1981); *Commonwealth* v. *Sylvester*, 13 Mass. App. Ct. 360, 365-369, further appellate review granted, 386 Mass. 1102 (1982).

In sum, we conclude that the trial judge did not abuse his discretion in denying the defendant's motion for a new trial and that there was no reversible error at the trial.

*Order denying motion for new trial affirmed.*

*Judgments affirmed.*