COMMONWEALTH vs. MARK SCHULZE.

Middlesex.  February 8, 1983. — July 22, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Evidence*, Insanity, Expert opinion. *Insanity. Witness*, Physician.

At a criminal trial in which insanity was raised as a defense, it was re-
versible error for the judge to exclude from evidence testimony of a
physician engaged in the general practice of medicine who had treated
the defendant on two occasions, four days and ten days prior to the
crimes, concerning his observations of the defendant and his diagnosis
of the defendant's mental condition at the time of the treatment,
where such testimony, added to other evidence, could have created a
reasonable doubt that the jury did not find with the physician's testi-
mony excluded.  [738-742]

INDICTMENTS found and returned in the Superior Court
Department on October 4, 1979.

The cases were tried before *Dimond*, J., and motions for
a new trial were heard by him.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Brownlow M. Speer* for the defendant.

*Kevin J. Ross*, Assistant District Attorney, for the Com-
monwealth.

WILKINS, J.  In this appeal, which is here on the defend-
ant's application for further appellate review (*Common-
wealth* v. *Schulze*, 14 Mass. App. Ct. 343 [1982]), we con-
clude that relevant evidence concerning the defendant's
lack of criminal responsibility was improperly excluded and
that the defendant may have been significantly prejudiced
thereby.  We therefore reverse his convictions and order a
new trial.

The defendant was convicted of crimes committed in the
course of an attempted armed robbery of a Somerville phar-

macy in September, 1979. The pharmacist activated a
silent alarm, and the police surrounded the premises. The
defendant and an accomplice, one Queeney, held the phar-
macist, one of his employees, and some customers as hos-
tages; the defendant negotiated with the police by telephone.
As time passed and tension built, the defendant demanded
drugs from the pharmacist and drank various codeine cough
medicines. Gradually the defendant became groggy from
the effects of the drugs; the pharmacist then disarmed him;
and the police entered the pharmacy and arrested the de-
fendant and Queeney.

The defendant's sole defense was that he lacked criminal
responsibility for his acts. In circumstances we shall state
more fully later in this opinion, the trial judge excluded
proffered testimony from a general practitioner who had
seen the defendant as a patient four days and ten days prior
to the crimes. The defendant presented a qualified psychia-
trist who testified that the defendant suffered from a
"chronic characterologic depression" and that, at the time
of the attempted robbery, the defendant was in an "acute
toxic psychosis" resulting from his use of heroin earlier that
day. The Commonwealth presented two psychiatrists who
testified that the defendant did not lack criminal responsi-
bility on the day of the attempted robbery. Represented by
new counsel on appeal, the defendant challenges his convic-
tions and the denial of his motion for a new trial.

The defendant called as a witness Dr. Stanley Chin, a
licensed general practitioner with about thirty years' experi-
ence, who testified that he saw the defendant as a patient on
September 7, 1979, and again on September 13, 1979.[1]
When defense counsel asked Dr. Chin to tell what his exam-
ination and his treatment of the defendant consisted of, the
prosecutor objected and a bench conference followed. The
prosecutor spoke first stating that, as he understood the de-
fense, it relied on an acute toxic psychosis that occurred on
the date of the crimes and only on that day. He said he did

---

[1] The crimes were committed on September 17, 1979.

not know what Dr. Chin could add. The following collo-
quy then occurred:

THE JUDGE: "What is he going to testify?"

DEFENSE COUNSEL: "Medical history."

THE PROSECUTOR: "He is not even a psychiatrist."

DEFENSE COUNSEL: "He is going to give an opinion as to his state those four or five days before."

THE JUDGE: "Is this man a psychiatrist, any psychiatric history?"

DEFENSE COUNSEL: "Just a general practitioner, your Honor."

THE JUDGE: "Sorry."

DEFENSE COUNSEL: "He gave him medication."

THE JUDGE: "Unless you can indicate to me he got qualifications to express an opinion as to this defendant's mental condition for criminal responsibility I will not allow him to testify."

DEFENSE COUNSEL: "If Your Honor pleases, with all due respect to your Honor, other evidence as to his mental responsibility — not his criminal responsibility, but his mental condition on previous occasions is admissible."

THE JUDGE: "What is he going to testify to?"

DEFENSE COUNSEL: "He will testify that he gave him one prescription, if your Honor please, one on each day for ten milligrams of Valium."

THE JUDGE: "That's all he's going to testify to?"

DEFENSE COUNSEL: "That's all."

THE JUDGE: "Excluded."

DEFENSE COUNSEL: "Note my objection."

The bench conference ended, and no further questions were
put to Dr. Chin.

At the hearing on the defendant's motion for a new trial, Dr. Chin was not called as a witness. The parties stipulated that, if called, Dr. Chin would testify that he examined and treated the defendant at his office on September 7 and 13, 1979, that he advised the defendant to have a psychiatric consultation, and that his diagnosis was "[d]epression with anxiety and manic tendencies." Defense counsel knew the nature of this proposed testimony before trial.

The colloquy presents several problems. The final offer of proof — that Dr. Chin prescribed Valium on two occasions — does not justify reversal of the defendant's convictions. The exclusion of that evidence, even if relevant, was not of sufficient significance to constitute prejudicial or reversible error. Such a limited view of the offer of proof, however, may not be warranted because defense counsel had indicated earlier that Dr. Chin would testify as to the defendant's medical history and give an opinion as to the defendant's "state those four or five days before." If the offer of proof was deficient, the issue then becomes, as the defendant contended in his motion for a new trial, whether the defendant was thereby denied the effective assistance of counsel.

We agree with the judge's comment that Dr. Chin could not testify concerning the defendant's criminal responsibility. In this Commonwealth, in order to give an opinion on criminal responsibility, a physician must be more qualified in the treatment of mental diseases and defects than a general practitioner, although he need not be a specialist in psychiatry. See *Commonwealth* v. *Boyd*, 367 Mass. 169, 181-183 (1975). However, the judge's suggestion that Dr. Chin could testify only if he had special qualifications to express an opinion on criminal responsibility went too far. We have never held that a physician, who saw a defendant shortly before the date of the alleged crime, may not testify to his observations and diagnosis of a defendant who asserts his lack of criminal responsibility. In such a situation the physician is not giving an expert opinion on criminal responsibility but rather he is providing information concerning the

defendant's condition based on personal observation. Our cases have made such a distinction. See *Commonwealth* v. *Spencer*, 212 Mass. 438, 447 (1912), quoting *Hastings* v. *Rider*, 99 Mass. 622, 624-625 (1868) ("persons 'having no peculiar skill or professional experience, can testify only to facts within their own knowledge, from which the condition of mind may be inferred, and are not permitted to state whether in their opinion, though derived from personal observation, a certain person was sane or insane at a particular time'"); *Commonwealth* v. *Rich*, 14 Gray 335, 337 (1859) (a general practitioner may not express an expert opinion on matters not within his own knowledge, hypothetically submitted to him, but may testify from his personal observation concerning a patient's symptoms upon his examination or treatment of the patient).[2]

Dr. Chin could have testified at least to what he observed on the two occasions, shortly before the crime, when he saw the defendant. Under our prior cases, however, he could not have given an opinion, based on hypothetical circumstances or even based on his personal observations, concerning the defendant's criminal responsibility on the days he saw the defendant or on the day of the crimes.[3] Our prior cases have not explicitly addressed whether a general practitioner who treated a defendant may testify as to his opinion, based on personal observation, of the defendant's mental condition at the time he saw the defendant. Expanding on our prior opinions, we conclude that, where criminal re-

_____

[2] In *Old Colony Trust Co.* v. *DiCola*, 233 Mass. 119, 124-125 (1919), a surgeon who treated the testator who had been shot gave his opinion that the testator died of "surgical shock" and that "surgical shock" causes anemia, mental apathy and dulled senses, but he was not allowed to state his opinion of the testator's soundness of mind.

[3] As the Appeals Court noted (*Commonwealth* v. *Schulze*, 14 Mass. App. Ct. 343, 346 & n.4 [1982]), the rule in most jurisdictions is that an opinion as to a person's mental condition may be received from a lay witness. Such a witness must have had an adequate opportunity to observe the defendant on occasions near the time of the crime. *Underwood* v. *State*, 553 S.W.2d 869, 871 (Mo. Ct. App. 1977). *Smith* v. *State*, 502 S.W.2d 814, 817 (Tex. Crim. App. 1973).

sponsibility is an issue at trial, a licensed physician should be allowed to testify to his observations, diagnosis, and treatment of a defendant whom he saw within a relevant period of time prior to or after the date of the crime.[4] This conclusion is the general view of well-reasoned opinions in jurisdictions where substantially the same standard of criminal responsibility is applied as we apply under *Commonwealth* v. *McHoul,* 352 Mass. 544, 546 (1967). See *United States* v. *Hartfield,* 513 F.2d 254, 259-260 (9th Cir. 1975); *United States* v. *Smith,* 507 F.2d 710, 711 (4th Cir. 1974); 2 J. Wigmore, Evidence § 569 (Chadbourn rev. 1979); K.B. Hughes, Evidence § 331, at 432-433 (1961). Such a view is consistent with the conclusion that, where criminal responsibility is in issue, the defendant's entire medical history and his conduct, condition, and appearance within a reasonable period before and after the crime are matters that properly may come before the jury. See *United States* v. *McRary,* 616 F.2d 181, 182-183 (5th Cir. 1980); *United States* v. *Ives,* 609 F.2d 930, 932 (9th Cir. 1979), cert. denied, 445 U.S. 919 (1980); *United States* v. *Smith, supra.* We thus conclude that under our opinions it would have been error to exclude Dr. Chin's testimony concerning his observations of the defendant if there had been a complete and proper offer of proof, and that, under the rule we now announce, Dr. Chin's diagnosis of the defendant's mental condition would have been admissible. If a physician not specially qualified in the treatment of mental diseases and emotional problems is qualified to diagnose and prescribe treatment for such conditions, he should be allowed to testify concerning those conditions based on personal observation. He may not, however, give an opinion on the issue of criminal responsibility. The extent of his training and experience would bear only on the weight that should be given to his testimony.[5]

---

[4] We specifically note that we are stating a new rule and that the Appeals Court should not be faulted for adhering to our prior decisions on this subject.

[5] Under Rule 701 of the Proposed Massachusetts Rules of Evidence and the parallel Federal rule of evidence, any witness not testifying as an ex-

Our inquiry does not end here. If the offer of proof properly preserved the issue for appellate consideration, we must decide whether the exclusion of that evidence was prejudicial error requiring reversal of the convictions and a new trial. If, alternatively, the issue was not properly preserved, we must decide whether any serious incompetency of counsel in presenting the offer of proof "likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). On the issue of competency of counsel, the question is whether the defendant has shown "that better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977). We do not pause to determine whether these standards (prejudicial error and material harm) are identical. In each instance, the defendant must show that the error possibly weakened his case in some significant way so as to require a new trial.

The theory of the defense was that acquaintances gave the defendant heroin and the defendant, who was drunk and depressed, injected himself with the heroin. The defense argued that the heroin was an overdose but that the defendant did not know it was an overdose and that the heroin caused an "acute toxic psychosis." The defendant's expert testified that the defendant lacked criminal responsibility as defined in *Commonwealth* v. *McHoul,* 352 Mass. 544, 546-547 (1967). The Commonwealth did not object to the admission of that evidence and does not argue to us that the issue of criminal responsibility was not properly one for the jury. There was evidence that would have warranted the jury in concluding that the defendant's consumption of heroin was not the consequence of drug addiction and that

pert would be permitted to state an opinion which was rationally based on the witness's perception and helpful to the determination of a fact in issue. The advisory committee's note on rule 701 states that the rule "may alter present Massachusetts law which excludes lay opinion as to sanity" (except as to an attesting witness to a will and a testator's attending physician). The new rule we state, limited to nonexpert physicians, does not go as far.

his consumption of heroin caused a mental disease or defect which he did not know would be caused by that consumption. These facts warranted an instruction on the question of criminal responsibility. See *Commonwealth* v. *Sheehan,* 376 Mass. 765, 769-770 (1978). The judge accordingly charged the jury on the *McHoul* standard and consistently with *Commonwealth* v. *Sheehan, supra,* concerning the effect of the consumption of drugs in connection with a claim of lack of criminal responsibility.

From our review of the evidence in this case, we conclude that the admission of Dr. Chin's testimony might have significantly affected the jury's conclusion on the issue of criminal responsibility. Dr. Chin's testimony, added to other evidence, could have created a reasonable doubt that the jury did not find with Dr. Chin's testimony excluded. Dr. Chin determined, four days before the crimes, that the defendant should seek a psychiatric consultation and that the defendant was depressed "with anxiety and manic tendencies." We cannot conclude in all fairness that the jury would not possibly have found this evidence significant in their consideration of the issue of criminal responsibility. Dr. Chin's testimony would have tended to support the opinion of the defendant's expert witness that the defendant was suffering from chronic depression. Our conclusion is not altered by the fact that the defendant's expert witness based his opinion on his belief that the defendant lacked criminal responsibility because of an acute toxic psychosis caused by the use of drugs on the day of the crimes. The defendant was not limited to only one theory in arguing his lack of criminal responsibility. See *Commonwealth* v. *Genius,* 387 Mass. 695, 697-698 (1982).

The order denying the motion for a new trial is reversed. The judgments are reversed and the verdicts set aside. There must be a new trial.[6]

*So ordered.*

---

[6] We do not discuss other issues argued by the defendant because they are not likely to be involved at the new trial.